1  Alex M. Weingarten (SBN 204410)
       amweingarten@venable.com
2  Logan M. Elliott (SBN 268105)
       lmelliott@venable.com
3  **VENABLE LLP**
   2049 Century Park East, Suite 2300
4  Los Angeles, California 90067
   Telephone: (310) 229-9900
5  Facsimile: (310) 229-9901

6  *Attorneys for Defendants*
   FLAVOR PRODUCERS, LLC and
7  JEFFREY HARRIS

8

9              **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11                  **WESTERN DIVISION**

12

13  FISCHLER KAPEL HOLDINGS, LLC,      Case No. 2:19-cv-10309-ODW-GJS
    RICHARD FISCHLER, and PAULA
14  KAPEL,                            Honorable Otis D. Wright II
                                      Courtroom No. 5D
15              Plaintiffs,
                                      **DEFENDANT FLAVOR**
16       v.                          **PRODUCERS, LLC'S MOTION**
                                     **FOR PRELIMINARY INJUNCTION**
17
                                      Hearing Date:    July 27, 2020
18  FLAVOR PRODUCERS, LLC and         Time:            1:30 p.m.
    JEFFREY HARRIS,                   Courtroom:       5D
19
                Defendants.           Action Filed:    December 4, 2019
20                                    FAC Filed:       May 1, 2020
                                      Pre-Trial
21                                    Conference Date: None set
                                      Trial Date:      None set
22

23

24

25

26

27

28

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ..................................................................1

STATEMENT OF FACTS ......................................................................3

    FPI And CFC Have Transaction Discussions ...............................3

    FPI's Subsidiary (Which Ultimately Becomes CCH) Acquires
    BioZone ...........................................................................................5

    The SPA Is Terminated And The Operative Asset Purchase
    Agreement Is Ultimately Executed In April 2017 ..........................5

    Fischler And Kapel Become Biozone Employees In July 2017 .................7

    Plaintiffs Filed A Demand For Arbitration With JAMS And FPI Filed
    A Jurisdictional Objection ..............................................................7

ARGUMENT ..........................................................................................9

I.    FPI IS LIKELY TO SUCCEED ON THE MERITS .....................9

    A.    This Court Must Determine Whether Plaintiffs' Arbitration
        May Proceed As FPI Is A Non-Party To The Employment
        Agreements ............................................................................9

    B.    FPI Will Prevail On The Question Of Arbitrability As None Of
        The Exceptions Permitting A Signatory To Compel A Non-
        Signatory To Arbitration Applies Here .................................12

        1.    The APA Does Not Incorporate The Employment
            Agreements By Reference ........................................12

        2.    FPI Did Not Assume The Employment Agreements ...........13

            a.    FPI Did Not Expressly Assume The Employment
                Agreements ...................................................... 13

            b.    FPI Did Not Impliedly Assume The Employment
                Agreements ...................................................... 14

        3.    There Is No Evidence That CFC Was Acting As FPI's
            Agent When It Entered Into The Employment
             Agreements ...............................................................16

        4.    There Is No Evidence Of Alter Ego Liability .......................17

        5.    There Is No Evidence That FPI Is Equitably Estopped
            From Refusing Arbitration ......................................18

II.    FPI WILL BE IRREPARABLY INJURED ABSENT INJUNCTIVE
    RELIEF................................................................................18

III.    THE BALANCE OF EQUITIES FAVORS INJUNCTIVE RELIEF ........20

i

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

IV.   THE PUBLIC INTEREST ALSO FAVORS INJUNCTIVE RELIEF ......21

V.   NO BOND SHOULD BE REQUIRED ....................................................22

CONCLUSION...................................................................................................23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

49424996      DEFENDANT FLAVOR PRODUCERS, LLC'S MOTION FOR PRELIMINARY INJUNCTION
Case No. 2:19-cv-10309-ODW-GJS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alliance for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) ................................................................. 9

*Avery v. Integrated Healthcare Holdings, Inc.*,
218 Cal. App. 4th 50 (2013) ................................................................. 13

*Boucher v. Alliance Title Co. Inc.*,
127 Cal. App. 4th 262 (2005) ................................................................. 12

*Carter v. CMTA-Molders & Allied Workers Health & Welfare Tr.*,
563 F. Supp. 244 (N.D. Cal. 1983) ......................................................... 14

*Comer v. Micor, Inc.*,
436 F.3d 1098 (9th Cir. 2006) ............................................................... 18

*Credit Suisse Sec. (USA) LLC v. Chia*,
2013 WL 12114009 (C.D. Cal. Oct. 18, 2013) ....................................... 23

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995) ............................................................................. 10

*Gerritsen v. Warner Bros. Entm't Inc.*,
116 F. Supp. 3d 1104 (C.D. Cal. 2015) ................................................. 17

*Ingram Micro Inc. v. Signeo Int'l, Ltd.*,
2014 WL 3721197 (C.D. Cal. July 22, 2014) ......................................... 22

*Johnson v. Couturier*,
572 F.3d 1067 (9th Cir. 2009) ............................................................... 22

*Jorgenson v. Cassiday*,
320 F.3d 906 (9th Cir. 2003) ................................................................. 23

*Kramer v. Toyota Motor Corp.*,
705 F.3d 1122 (9th Cir. 2013) ........................................................... 9, 11

*Letizia v. Prudential Bache Sec., Inc.*,
802 F.2d 1185 (9th Cir. 1986) ............................................................... 12

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

iii

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*,
    634 F.2d 1197 (9th Cir. 1980) ................................................................... 20

*McLaughlin Gormley King Co. v. Terminix Int'l Co.*,
    105 F.3d 1192 (8th Cir. 1997) ................................................................... 19

*Merrill Lynch Inv. Managers v. Optibase, Ltd.*,
    337 F.3d 125 (2d Cir. 2003) ...................................................................... 19

*Pacini v. Nationstar Mortg., LLC*,
    2013 WL 2924441 (N.D. Cal. June 13, 2013) ........................................... 14

*Pension Plan for Pension Tr. Fund for Operating Eng'rs v. Weldway
    Constr., Inc.*,
    920 F. Supp. 2d 1034 (N.D. Cal. 2013) ..................................................... 19

*People of the State of Cal. v. Chevron Corp.*,
    872 F.2d 1410 (9th Cir. 1989) ........................................................ 20, 21, 22

*Shell Offshore, Inc. v. Greenpeace, Inc.*,
    709 F.3d 1281 (9th Cir. 2013) ..................................................................... 9

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*,
    739 F.2d 1415 (9th Cir. 1984) ..................................................................... 9

*Sunlight Prod. Techs., Ltd. v. MPOWERD Inc.*,
    2015 WL 12655472 (C.D. Cal. Mar. 23, 2015) ................................. *passim*

*UFCW & Emp'rs Benefit Tr. v. Sutter Health*,
    241 Cal. App. 4th 909 (2015) ................................................................... 16

*United States v. Sterling Centrecorp Inc.*,
    960 F. Supp. 2d 1025 (E.D. Cal. 2013) ..................................................... 14

*Van De Kamp v. Tahoe Reg'l Planning Agency*,
    766 F.2d 1319 (9th Cir. 1985), *amended*, 775 F.2d 998 (9th Cir.
    1985) ......................................................................................................... 23

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ............................................................................ 9, 19, 21

*Wolschlager v. Fidelity Nat'l Title Ins. Co.*,
    111 Cal. App. 4th 784 (2003) ............................................................ 12, 13

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

iv

**Statutes**

Cal. Civ. Code § 2298 ................................................................................. 16

Cal. Civ. Code § 2299 ................................................................................. 16

Cal. Civ. Code § 2300 ............................................................................ 16, 17

**Other Authorities**

Fed. R. Civ. P. 65 ...................................................................................... 22

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

## **PRELIMINARY STATEMENT**

Defendant Flavor Producers, LLC ("FPI") seeks a preliminary injunction prohibiting Plaintiffs Richard Fischler ("Fischler") and Paula Kapel ("Kapel") (collectively, "Plaintiffs") from proceeding with a meritless claim before JAMS. Unbeknownst to this Court, while this lawsuit has been proceeding in this forum, Plaintiffs attempt to pursue similar claims against FPI before JAMS wherein Plaintiffs allege that FPI breached employment agreements to which FPI is not a party and which FPI never assumed (the "Arbitration"). The Arbitration is duplicative of an equally baseless claim in this action. In both this action and the Arbitration, Plaintiffs seek unpaid compensation allegedly owed under Plaintiffs' June 2015 employment agreements (the "Employment Agreements") which Plaintiffs entered into with the company they owned, Creative Flavor Concepts, Inc. ("CFC"). Plaintiffs' initial problem – setting aside the substantive preposterousness of their claim – is that FPI is not, and has never been, a party to the Employment Agreements and is not a party to any other agreement to arbitrate with Plaintiffs. Accordingly, setting aside the absurdity of Plaintiffs' claims, any arbitrator in the Arbitration (the "Arbitrator") lacks jurisdiction to decide the dispute. The law is clear – the threshold question of the arbitrability of the Arbitration dispute must be decided by this Court, not an arbitrator. A preliminary injunction is appropriate as the Arbitration cannot proceed unless and until this Court (not the Arbitrator) resolves the dispositive, gateway question of whether the parties' dispute arising from the Employment Agreements is arbitrable.

The First Amended Complaint (the "FAC") in this case asserts a claim against FPI and Defendant Jeffrey Harris ("Harris") for fraudulent inducement of the Employment Agreements and seeks damages for unpaid compensation under the Employment Agreements. In the Arbitration, Plaintiffs seek the exact same relief against FPI – unpaid compensation under the Employment Agreements – based on the same underlying allegations of the case before this Court. On April

1

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

30, 2020, FPI filed a jurisdictional objection in the Arbitration: (1) denying that the Arbitrator had jurisdiction over Plaintiffs' claim for breach of the Employment Agreements because FPI is not and has never been a party to, and never explicitly or implicitly assumed, the Employment Agreements containing the arbitration provisions; and (2) arguing based on well-established authority that only a court (not the Arbitrator) has jurisdiction to determine whether the Arbitrator has jurisdiction to hear the dispute.  However, on May 28, 2020 – prior to the appointment of an arbitrator – the case manager in the Arbitration informed the Arbitration parties that, contrary to well-settled law, the Arbitrator would resolve FPI's jurisdictional challenge.  Accordingly, FPI had no choice but to seek a preliminary injunction prohibiting the Arbitration from proceeding until the gateway issue of arbitrability is resolved by the only body empowered to do so – this Court.

FPI satisfies the requisite elements for a preliminary injunction. Specifically:

- FPI will likely succeed on the merits as: (1) it is well-established that, where a signatory to an arbitration agreement moves to compel a *non-signatory* (like FPI) to arbitrate, the question of whether the dispute is subject to arbitration must be decided by a court, not an arbitrator; (2) it is undisputed that FPI is a non-party to the Employment Agreements; and (3) none of the limited theories under which an arbitration clause can be enforced against a non-signatory apply here.

- FPI will suffer irreparable harm if it is forced to proceed with the Arbitration.  FPI will be forced to expend significant time and resources arbitrating a claim that is duplicative of disputes pending before this Court pursuant to an arbitration agreement to which it is not a party.

- The balance of equities favors injunctive relief.  Granting FPI's request for a preliminary injunction would not cause Plaintiffs any hardship.  A claim seeking the exact same relief asserted by Plaintiffs in the Arbitration – *i.e.*, unpaid compensation allegedly owed under the Employment Agreements – is

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

2

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

1  already pending before this Court.  Plaintiffs have no interest this Court is required

2  to respect in pursuing double recovery of the same allegedly unpaid compensation.

3      •   The public interest also favors the requested injunctive relief.  Forcing

4  a party that never agreed to arbitrate a dispute to do so is not in the public interest.

5  Not only was FPI never a party to the Employment Agreements, FPI expressly did

6  not assume the Employment Agreements.  Accordingly, the public interest would

7  be especially ill-served where a party may compel FPI, a non-signatory to an

8  arbitration agreement (who actively rejected the assumption of the subject

9  agreements), to arbitrate a claim, *all while simultaneously seeking the exact same*

10 *relief in court.*

11     Plaintiffs' improper attempt to force FPI to submit to arbitration should not

12 be countenanced.  An injunction will prevent FPI from suffering irreparable harm

13 and will still provide Plaintiffs a forum to pursue their manufactured claims.

14 ### STATEMENT OF FACTS

15 ### FPI And CFC Have Transaction Discussions

16     Since 1981, FPI has operated as a successful international provider of

17 premium quality, custom formulated flavors, extracts, distillates, and essences to

18 some of the world's largest food, supplement, and beverage manufacturers.  *See*

19 Decl. of Jeffrey Harris ("Harris Decl.") ¶ 2.  CFC engaged in two primary lines of

20 business: the "flavor business" (the formulation and manufacture of flavors for

21 various food products) and the "turnkey manufacturing business" or the "non-

22 flavor business" (the production of food products to order for customers).  *Id.* ¶ 3.

23     In or around January 2015, FPI and its advisors began discussions with

24 Fischler regarding a possible business relationship between FPI and CFC.  *Id.* ¶ 4.

25 At that time, FPI and CFC ultimately agreed that FPI, through FPI's newly-created

26 wholly owned subsidiary, CFCAC, Inc. ("CFCAC"), would acquire a majority

27 interest in CFC (the "Scuttled CFC Stock Acquisition").  *Id.*  The Scuttled CFC

28

Stock Acquisition included the execution of the following documents dated June 19, 2015:

- *Stock Purchase and Redemption Agreement between CFCAC, Fischler, and Kapel (the "SPA")*.  CFCAC was to acquire 66% of CFC's stock as a result of the SPA.  *See id.* Ex. C (SPA) at Preamble.

- *Services Agreement between CFC and FPI*.  The Services Agreement provided that: (1) CFC would refer all flavor formulation business to FPI; and (2) FPI would refer all non-flavor business to CFC.  *See id.* Ex. D.

- *Employment Agreements between CFC, Kapel, and Fischler*.  CFC entered into employment agreements under which: (1) Fischler agreed to act as CFC's Chief Executive Officer; and (2) Kapel agreed to act as CFC's Vice President of Flavor Formulation and Secretary.  *See id.* Exs. A & B (Employment Agreements).  The Employment Agreements contained arbitration clauses that committed the resolution of disputes between the "Parties" (*i.e.*, CFC and Fischler, and CFC and Kapel) to arbitration:

> [I]n the event of any dispute, claim or controversy *between the Parties* arising out of or relating in any way (whether directly or indirectly) to this agreement . . . such dispute, claim or controversy shall be resolved by and through a confidential arbitration proceeding . . . . Whether any *such* dispute, claim, or controversy is subject to arbitration shall likewise be determined by the arbitrator.

*Id.* Ex. A ¶ 8(b) (emphasis added).

Prior to the consummation of the Scuttled CFC Stock Acquisition, as Plaintiffs allege in the FAC, "[o]nce the Services Agreement was in place, Fischler was asked by FPI to focus on business development and sales[.]"  FAC ¶ 95.

In March 2016, while the Scuttled CFC Stock Acquisition had still not been consummated due to CFC's inability to provide accurate financial statements, the SPA and the Services Agreement were amended.  *See id.* Exs. E (Amended SPA) & F (First Amendment to Services Agreement).

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

**FPI's Subsidiary (Which Ultimately Becomes CCH) Acquires BioZone**

In or around early 2016, Fischler recommended that FPI acquire BioZone Laboratories, Inc. ("BioZone") from another entity, MusclePharm, Inc.  *Id.* ¶ 9. On or about March 20, 2016, Biozone Holdings, Inc. was incorporated as a wholly owned subsidiary of FPI.  *Id.*  BioZone Holdings, Inc. then acquired BioZone.  *Id.*

BioZone Holdings, Inc. subsequently changed its name to Creative Flavor Holdings, Inc. and then to Creative Concepts Holdings, Inc. ("CCH").  *Id.*  CCH later changed from a corporation to a limited liability company and became Creative Concepts Holdings, LLC in June 2017.  *Id.*

**The SPA Is Terminated And The Operative Asset Purchase Agreement Is Ultimately Executed In April 2017**

On or around October 31, 2016, FPI via CFCAC elected to terminate the Scuttled CFC Stock Acquisition.  *Id.* Ex. G (SPA Termination Letter).  In an October 31, 2016 letter from CFCAC, signed by Fischler and Kapel in their individual capacities, Fischler and Kapel acknowledged that the original SPA had been terminated as a result of false financial statements submitted by CFC.  *See id.*

Because FPI was no longer willing to acquire the entire CFC entity, in or about January 13, 2017, FPI, CFC, and CCH entered into effectively a tri-party Asset Purchase Agreement.  *See id.* Ex. H (the "January 2017 APA").  Pursuant to the January 2017 APA, FPI was to acquire certain of CFC's assets associated with its flavor business, and CCH was to acquire certain of CFC's assets associated with its turnkey manufacturing business.  *See generally id.*

CFC and CCH entered into an Administrative Services Agreement concurrently with the January 2017 APA.  *See id.* Ex. I (Administrative Services Agreement).  In accordance with the Services Agreement and the First Amendment to Services Agreement, the Administrative Services Agreement acknowledged that CFC was responsible for running its "turnkey" or non-flavor business.  *See id.* § 2.01.  The Administrative Services Agreement also provides that CFC "will

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

remain throughout the term of the Agreement, as an independent contractor" and "is not and will not become a partner, agent, or principal" of CCH while the Agreement is in effect. *Id.* § 2.03. The Administrative Services Agreement further provides that "CFC is responsible for providing, at its own expense, all compensation and benefits to [its] personnel." *Id.*

On or around April 27, 2017, the January 2017 APA was rescinded, again due to Fischler's inability to provide accurate financial information about CFC. *See id.* ¶ 13 & Ex. J (Rescission Agreement). FPI, CFC, and CCH then entered into the operative Asset Purchase Agreement. *See id.* Ex. K (the "APA"). The APA was effectively a tri-party agreement primarily between CFC and CCH, with FPI involved in a much more minor capacity than CCH. Specifically, CFC was defined in the APA as the "Seller," CCH was defined as the "Buyer," and FPI was defined as the "Flavor Buyer." *See* APA at Preamble. Pursuant to the APA, CCH acquired certain of CFC's assets and assumed certain liabilities relating to CFC's non-flavor business, while FPI only acquired certain of CFC's assets relating to CFC's flavor business. *See generally id.*

Subparagraph 6.2(a)(iii) of the APA provided that at the Closing, CFC, Fischler, and Kapel would deliver employment agreements that, at the time the parties executed the APA, *were not yet agreed upon*. *See* APA ¶ 6.2(a)(iii) ("Employment agreements with Fischler and Kapel on such terms as may be mutually agreed upon between the parties to each such agreement."). The APA further specified that CFC, Fischler, and Kapel must deliver these new employment agreements to the "Buyer," which was CCH and *not* FPI. *See* APA ¶ 10.1(e) (providing that a condition to closing is "[t]he Employment Agreements will have been executed and delivered to the Buyer"); APA Preamble (defining CCH as the "Buyer" and FPI as the "Flavor Buyer").

The APA also contained an enumerated list of liabilities that were assumed by FPI – the Employment Agreements were *not* on that list. Specifically,

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

paragraph 5.2 provided that FPI "shall assume all of [CFC's] rights and obligations arising after the Effective Date under those contracts (*and only those contracts*) listed and marked with a double asterisk in Schedule 7.10." APA ¶ 5.2 (emphasis added). Schedule 7.10 (Flavor Customer Contracts) refers to Schedule 5.3 (Assumed Liabilities). *See* APA Sched. 7.10. Schedule 5.3 does not list the Employment Agreements or any employment agreements at all. *See* APA Sched. 5.3.

### Fischler And Kapel Become Biozone Employees In July 2017

Fischler and Kapel ultimately executed new employment agreements with BioZone. *See* Harris Decl. ¶ 18 & Ex. L (BioZone Employment Agreement). Fischler and Kapel became full-time BioZone employees in July 2017. *See id.* ¶ 18 & Ex. L. Fischler and Kapel received employment compensation from BioZone. *See id.* Ex. M (Kapel BioZone Pay Stub). Prior to becoming BioZone employees, Fischler and Kapel were employees of CFC and CCH, never FPI. *See id.* ¶ 18 & Ex. N (Kapel CFC Pay Stub).

Plaintiffs were simply never on FPI's payroll and were never FPI employees. *See* Harris Decl. ¶¶ 22-23. Instead, Plaintiffs remained CFC employees until they became CCH and BioZone employees. *See id.* ¶ 18. A paystub for Kapel demonstrates that she was an employee of CFC, and that CFC – not FPI – paid her salary prior to her employment by BioZone. *See id.* Ex. N.

### Plaintiffs Filed A Demand For Arbitration With JAMS And FPI Filed A Jurisdictional Objection

Plaintiffs sued Defendants in this Court on December 4, 2019. *See* Dkt. No. 1. After Defendants moved to dismiss the Claims in Plaintiffs' Complaint on April 10, 2020, *see* Dkt. No. 34, Plaintiffs filed the FAC on May 1, 2020. *See generally* FAC. The FAC asserts nine claims against Defendants, including a claim for fraudulent inducement of the Employment Agreements in which Plaintiffs allege that: (1) Harris falsely represented that "FPI was prepared to complete the payment

**V E N A B L E   L L P**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

7

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

1   under the Employment Agreements," *id.* ¶ 226; and (2) they are entitled to

2   damages "in an amount equal to the unpaid compensation" due under the

3   Employment Agreements, *id.* ¶¶ 230-31.

4          Meanwhile, on April 16, 2020, Plaintiffs commenced the Arbitration. *See*

5   Harris Decl. ¶ 26 & Ex. O (the "Demand"). In their Demand, Plaintiffs again

6   allege that FPI owes them unpaid compensation due under the Employment

7   Agreements – specifically, over $1.2 million in "back payments." Demand ¶¶ 11-

8   17. The Demand failed to mention, however, that FPI is not a party to either of the

9   Employment Agreements. *See generally id.*

10         On April 30, 2020, FPI filed an objection in the Arbitration on the grounds

11   that JAMS lacked jurisdiction over the Plaintiffs' claims because FPI is not a party

12   to the Employment Agreements. *See* Harris Decl. Ex. P. FPI further argued that

13   only a court – and not the arbitrator – could determine whether FPI is bound by the

14   arbitration provisions in the Employment Agreements. *See id.* Plaintiffs filed an

15   opposition, and FPI then filed a reply. *See id.* Exs. Q, R.

16         FPI and Plaintiffs received a two-paragraph notice from JAMS regarding

17   FPI's jurisdictional objection on May 28, 2020. *See id.* Ex. S. The notice

18   concluded that the "arbitrator has the authority to determine jurisdictional issues as

19   a preliminary matter" and instructed that "JAMS will proceed with the

20   administration of this matter[.]" *Id.* The notice did not address any of FPI's

21   arguments or authorities. *See generally id.*

22         JAMS issued a Notice of Commencement of Arbitration on June 5, 2020

23   instructing the parties to submit a strike and ranking list of proposed arbitrators.

24   *Id.* Ex. T. In response, FPI notified JAMS and Plaintiffs that it objected to the

25   appointment of an arbitrator until the question of whether the dispute is arbitrable

26   is resolved by a court. *Id.* Ex. U. FPI also stated that it intended to file a motion

27   for preliminary injunction prohibiting Plaintiffs from prosecuting their claims

28

1  against FPI before JAMS pending resolution of the arbitrability question by this

2  Court.  *See id.*

3  **ARGUMENT**

4        A party seeking a preliminary injunction must demonstrate that: (1) it is

5  likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the

6  absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an

7  injunction is in the public interest.  *See Winter v. Natural Res. Def. Council, Inc.*,

8  555 U.S. 7, 20 (2008) (reciting required elements for preliminary injunction).  The

9  Ninth Circuit uses a "sliding scale" approach to preliminary injunctions.  *See*

10  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

11  Under this approach, "[i]f a [movant] can only show that there are 'serious

12  questions going to the merits' – a lesser showing than likelihood of success on the

13  merits – then a preliminary injunction may still issue if the 'balance of hardships

14  tips *sharply* in the [movant's] favor,' and the other two *Winter* factors are

15  satisfied."  *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir.

16  2013).  A "serious question" is one as to which the movant "has a fair chance of

17  success on the merits."  *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d

18  1415, 1421 (9th Cir. 1984).

19  **I.**   **FPI IS LIKELY TO SUCCEED ON THE MERITS**

20        FPI is likely to succeed on the merits because Plaintiffs have initiated an

21  arbitration proceeding that is prohibited by the relevant arbitration agreements to

22  which FPI has never been a party.  At a minimum, FPI has raised serious questions

23  warranting injunctive relief.

24        **A.**   **This Court Must Determine Whether Plaintiffs' Arbitration May**

25              **Proceed As FPI Is A Non-Party To The Employment Agreements**

26        "It is well settled in both commercial and labor cases that whether parties

27  have agreed to 'submi[t] a particular dispute to arbitration' is typically an 'issue for

28  judicial determination.'"  *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1127 (9th

9

V E N A B L E   L L P<br>2049 CENTURY PARK EAST, SUITE 2300<br>LOS ANGELES, CA  90067<br>310-229-9900

Cir. 2013).  Where a signatory to an arbitration agreement moves to compel a *non-signatory* to participate in arbitration, the issue of who decides whether the dispute is subject to arbitration must be made by a court.  *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 947 (1995); *see also Sunlight Prod. Techs., Ltd. v. MPOWERD Inc.*, 2015 WL 12655472, at *6 (C.D. Cal. Mar. 23, 2015).

*Sunlight* is instructive.  There, the plaintiff moved to preliminarily enjoin the defendants from asserting arbitration claims against it on the grounds that it did not sign the agreement containing the relevant arbitration provision and, thus, was not bound by the arbitration provision.  *See* 2015 WL 12655472, at *5.  The court explained that "[t]he question first arises as to who should decide which parties are bound by arbitration: the Court or the arbitrator?"  *Id.* at *6.  The court answered conclusively that it – and not the arbitrator – must determine the issue of arbitrability where a signatory attempts to enforce an arbitration agreement against a non-signatory.  *See id.* ("[T]he scope of an arbitrator's jurisdiction is only arbitrable *if the parties agreed to arbitrate it.*") (emphasis added).

As in *Sunlight*, the arbitrator does not have jurisdiction to arbitrate the dispute between Plaintiffs and FPI because FPI is a non-signatory to the agreements containing the arbitration provisions.  FPI is not a party to the Employment Agreements and, thus, did not agree to be bound by the arbitration provisions in the Employment Agreements.  *See* Harris Decl. Ex. A at Preamble (identifying Parties as CFC and Fischler) & 12 (showing Kapel's signature as Secretary of CFC and Fischler's signature); *see also id.* Ex. B at Preamble (identifying Parties as CFC and Kapel) & 12 (showing Fischler's signature as President of CFC and Kapel's signature).  Consequently, only this Court can determine whether the arbitration clauses in the Employment Agreements are operative against FPI.  *See Sunlight*, 2015 WL 12655472, at *6.

Even assuming *arguendo* that an arbitrator has jurisdiction to determine whether an arbitration agreement can be enforced by a signatory against a non-

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

signatory (as opposed to by a non-signatory against a signatory), "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *Kramer*, 705 F.3d at 1127 (quoting *First Options*, 514 U.S. at 944). In *Kramer*, the court held that Toyota, a non-signatory to the relevant arbitration agreement, could not compel plaintiffs, who were signatories to the arbitration agreement, to arbitration because the arbitration agreements did not contain "clear and unmistakable evidence that Plaintiffs and Toyota agreed to arbitrate arbitrability." *Id.* at 1127. The arbitration agreement was between the plaintiffs and Toyota dealerships and stated that "[i]f either *you or we* elect, any claims or disputes arising out of this transaction . . . will be determined by binding arbitration and not by court action." *Id.* at 1124 (emphasis added). The court concluded that the "language of the contracts thus evidences Plaintiffs' intent to arbitrate arbitrability with the Dealerships and no one else." *Id.* at 1127.

Plaintiffs cannot present any clear and unmistakable evidence that Plaintiffs and FPI agreed to arbitrate arbitrability. The Employment Agreements explicitly provide that the arbitration provision applies only to parties to the Employment Agreements:

> [I]n the event of any dispute, claim or controversy *between the Parties* arising out of or relating in any way (whether directly or indirectly) to this agreement . . . such dispute, claim or controversy shall be resolved by and through a confidential arbitration proceeding . . . . Whether any *such* dispute, claim, or controversy is subject to arbitration shall likewise be determined by the arbitrator.

Harris Decl. Ex. A ¶ 8(b) (emphasis added). FPI is not, and never was, a party to the Employment Agreements. *See id.* Ex. A at Preamble & 12; *see also id.* Ex. B & 12. Rather, the Parties to the Employment Agreements are: (1) Fischler and CFC, *see id.* Ex. A at Preamble; and (2) Kapel and CFC, *see id.* Ex. B at Preamble. Accordingly, the language of the Employment Agreements "evidences Plaintiffs' intent to arbitrate arbitrability with [CFC] and no one else." *See Kramer*, 705 F.3d

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

1    at 1127.  The only document which could lawfully purport to do so would be the

2    APA which was executed by FPI, CCH, CFC, and Plaintiffs, and the APA does not

3    include any such arbitration provision.

   **B.      FPI Will Prevail On The Question Of Arbitrability As None Of**
4
   **The Exceptions Permitting A Signatory To Compel A Non-**
5
   **Signatory To Arbitration Applies Here**
6

7        "[N]onsignatories of arbitration agreements may be bound by the agreement

8    under ordinary contract and agency principles." *Letizia v. Prudential Bache Sec.,*

9    *Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986).  "Federal courts have identified five

10   theories pursuant to which an arbitration clause can be enforced by or against a

11   nonsignatory": (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-

12   piercing/alter ego; and (5) estoppel.  *Sunlight*, 2015 WL 12655472, at *6 (quoting

13   *Boucher v. Alliance Title Co. Inc.*, 127 Cal. App. 4th 262, 268 (2005)).  "These are

14   'limited exceptions' to the general rule . . . that arbitration is a contractual right

15   available only to signatories to the agreement." *Boucher*, 127 Cal. App. 4th at 268.

16   None of these five limited theories under which an arbitration clause can be

17   enforced against a non-signatory apply here.

   **1.      The APA Does Not Incorporate The Employment**
18
   **Agreements By Reference**
19

20       In the Arbitration Demand, Plaintiffs imply that the arbitration clauses in the

21   Employment Agreements apply to FPI because the January 2017 APA incorporates

22   the Employment Agreements by reference.  *See* Demand ¶¶ 11-12.  Specifically,

23   Plaintiffs contend that FPI purchased the Employment Agreements when it

24   executed the January 2017 APA.  *See id.*  Not so.  As a preliminary matter, the

25   January 2017 APA was rescinded by the Parties.  *See* Harris Decl. Ex. J.  In

26   addition, the APA does not incorporate the Employment Agreements by reference.

27       "A contract may validly include the provisions of a document not physically

28   a part of the basic contract." *Wolschlager v. Fidelity Nat'l Title Ins. Co.*, 111 Cal.

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

App. 4th 784, 790 (2003); *see also id.* ("[P]arties may incorporate by reference into their contract the terms of some other document.").  "For the terms of another document to be incorporated into the document executed by the parties[,] the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties."  *Id.*; *see also Avery v. Integrated Healthcare Holdings, Inc.*, 218 Cal. App. 4th 50, 67 (2013) ("The party seeking to enforce an arbitration provision incorporated by reference must establish the provision it seeks to enforce is the same provision to which the parties agreed.").

The APA does not contain any reference at all – let alone a "clear and unequivocal" reference – to the Employment Agreements at issue in this dispute. Instead, subparagraph 6.2(a)(iii) of the APA provides that at the Closing, CFC, Fischler, and Kapel will execute and deliver employment agreements that *were not yet agreed upon*.  *See* APA ¶ 6.2(a)(iii) ("Employment agreements with Fischler and Kapel on such terms as *may be mutually agreed upon* between the parties to each such agreement.").  Further, the APA specifies that CFC, Fischler, and Kapel must execute and deliver these new employment agreements to the "Buyer."  *See* APA ¶ 10.1(e) ("The Employment Agreements will have been executed and delivered to the Buyer.").  The APA defines CCH, not FPI, as the "Buyer."  *See* APA Preamble (defining CCH as "Buyer" and FPI as "Flavor Buyer").

## 2. FPI Did Not Assume The Employment Agreements

In the FAC, Plaintiffs allege that FPI "assumed the Employment Agreements on or around January 2017 as part of the sale of CFC's assets."  FAC ¶ 63.  But, FPI neither expressly nor impliedly assumed the Employment Agreements.

### a. FPI Did Not Expressly Assume The Employment Agreements

The January 2017 APA was rescinded by the Parties and the APA is clear

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

that FPI did not assume the Employment Agreements.  Paragraph 5.2 provides that FPI "shall assume all of [CFC's] rights and obligations arising after the Effective Date under those contracts (*and only those contracts*) listed and marked with a double asterisk in Schedule 7.10."  APA ¶ 5.2 (emphasis added).  Schedule 7.10 (Flavor Customer Contracts) refers to Schedule 5.3.  *See* APA Sched. 7.10.  Schedule 5.3 (Assumed Liabilities) *does not list the Employment Agreements* or any contracts whatsoever with a double asterisk, and all of the contracts listed there are for CCH (not FPI) to assume.  *See* APA Sched. 5.3.  Further, paragraph 5.4 provides that no other liabilities are assumed by either FPI or CCH unless expressly pursuant to the APA.  *See* APA ¶ 5.4 ("Seller Parties shall remain liable and responsible for any and all of its debts, obligations, and liabilities not expressly assumed by [CCH] or [FPI] under this Agreement.").

### b.   <u>FPI Did Not Impliedly Assume The Employment Agreements</u>

Plaintiffs likewise cannot establish that FPI impliedly assumed the Employment Agreements.  "Whether a party has impliedly assumed the liabilities of another 'depends on the facts and circumstances of each case' and the parties' conduct and representations."  *United States v. Sterling Centrecorp Inc.*, 960 F. Supp. 2d 1025, 1038 (E.D. Cal. 2013).  The evidence must "support a finding that [the assuming party] consented to be bound by [its] predecessor's agreements."  *Carter v. CMTA-Molders & Allied Workers Health & Welfare Tr.*, 563 F. Supp. 244, 247 (N.D. Cal. 1983).  "Whether an implied assumption of liabilities occurred depends on the intent of the parties, and an assumption may be implied when a party accepts the rights and privileges of a contract."  *Pacini v. Nationstar Mortg., LLC*, 2013 WL 2924441, at *4 (N.D. Cal. June 13, 2013).  A court may look to an agreement's provisions to determine whether the parties intended that the liabilities be transferred.  *See id.* at *5.

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

As stated, FPI initially wanted to acquire CFC as an entity, but ultimately agreed to only acquire a small portion of CFC's assets.  The APA states expressly what FPI is acquiring and what it is not.  Had the parties to the APA desired something different, they had more than ample opportunity to draft documentation accordingly as there were multiple agreements (all negotiated and prepared by attorneys for FPI, CFC, and Plaintiffs) and multiple terminations and rescissions.  Yet, the APA is the final embodiment of the agreement to which the parties ultimately agreed and consummated.  The APA and the history of the documentation which leads up to it do not support a finding that FPI consented to be bound by the Employment Agreements.  The APA is actually clear that FPI explicitly did *not* intend to assume the Employment Agreements, as discussed above.  *See supra* § I.B.2.a.  Instead, the APA demonstrates that Plaintiffs were to become employees of CCH, not FPI.  *See supra* § I.B.1.

Plaintiffs cannot present any evidence to support a finding that FPI consented to be bound by the Employment Agreements.  As discussed above, the APA is actually clear that FPI explicitly did *not* intend to assume the Employment Agreements and that, instead, Plaintiffs were to become employees of CCH, not FPI, as discussed above.  *See supra* § I.B.1. and 2.a.  Plaintiffs also cannot establish that FPI acted in conformance with the Employment Agreements it never signed.  Plaintiffs cannot provide any evidence – such as a W-2 form or paystub from FPI – that FPI paid Plaintiffs their salaries.  Rather, the evidence shows that Plaintiffs were never on FPI's payroll.  Contrary to Plaintiffs' representations, Fischler and Kapel remained employees of CFC until they became employees of BioZone, a subsidiary of CCH.  *See, e.g.*, Harris Decl. Ex. N (Kapel CFC paystub).  A paystub for Kapel demonstrates that she was an employee of CFC after the closing of the APA and that CFC – and not FPI – paid her salary prior to her employment by BioZone.  *See id.*

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

Further, any work that Plaintiffs performed while employees of CFC from January 2017 until they became employees of Biozone in July 2017 was performed for CFC or CCH, not FPI.  Pursuant to the Services Agreement and First Amendment to Services Agreement, CFC was responsible for running only its non-flavor business and would refer all flavor-business to FPI.  *Id.* Exs. D & F.  Pursuant to the APA, CCH was to acquire certain of CFC's assets associated with its non-flavor business.  *See generally* APA.  The Administrative Services Agreement executed in January 2017 acknowledges that CFC was responsible for running its non-flavor business and would perform services relating to its non-flavor business for CCH.  *See* Harris Decl. Ex. I § 2.01.  CFC existed after the closing of the APA with Fischler using his CFC email address as recently as 2019.  *See* Harris Decl. ¶ 20.

### 3.  There Is No Evidence That CFC Was Acting As FPI's Agent When It Entered Into The Employment Agreements

There is no evidence that an agency relationship existed between CFC and FPI when CFC entered into the Employment Agreements.  "An agency is either actual or ostensible."  Cal. Civ. Code § 2298.  "An agency is actual when the agent is really employed by the principal."  *Id.* § 2299.  "An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him."  *Id.* § 2300; *see also UFCW & Emp'rs Benefit Tr. v. Sutter Health*, 241 Cal. App. 4th 909, 932 (2015) ("Ostensible authority must be based on the acts or declarations of the principal and not solely upon the agent's conduct.").

There is no evidence that CFC was acting as FPI's agent when it entered into the Employment Agreements.  Specifically:

- Plaintiffs cannot establish actual agency.  Plaintiffs can point to no provision in the SPA or any other agreement authorizing CFC to act as FPI's agent when CFC entered into the Employment Agreements.  *See generally* SPA.

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

16

- Plaintiffs likewise cannot establish ostensible agency.  Plaintiffs can point to no evidence showing that FPI "caused a third person to believe" CFC acted as its agent when CFC entered into the Employment Agreements.  *See* Cal. Civ. Code § 2300.  FPI believed - in accordance with the plain language of the Employment Agreements – that the Employment Agreements were between CFC and Plaintiffs and did not do or state anything contrary to this belief.  *See* Harris Decl. ¶ 6.

## 4.   There Is No Evidence Of Alter Ego Liability

Plaintiffs cannot establish that FPI and CFC are alter egos of each other. "The alter ego doctrine arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interests." *Gerritsen v. Warner Bros. Entm't Inc.*, 116 F. Supp. 3d 1104, 1135-36 (C.D. Cal. 2015).  "The purpose of the doctrine is to bypass the corporate entity in order to avoid injustice." *Id.* at 1136.  To establish alter ego liability, Plaintiffs must establish two elements: (1) "a unity of interest and ownership between the corporation and its equitable owner [such] that the separate personalities of the corporation and the shareholder do not in reality exist"; and (2) "an inequitable result if the acts in question are treated as those of the corporation alone." *Id.*  "[A] plaintiff must allege specific facts supporting both of the necessary elements," and cannot rely on "[c]onclusory allegations." *Id.*

Plaintiffs cannot establish a "unity of interest and ownership" between CFC and FPI.  The unity of interest and ownership test is satisfied where a "parent dictates every facet of the subsidiary's business – from broad policy decisions to routine matters of day-to-day operation." *Id.* at 1138.  But, Plaintiffs cannot offer any evidence to establish that FPI "dictate[d] every facet of CFC's business." *Id.* When the Employment Agreements were executed, FPI and CFC operated as completely separate entities and this continued for years thereafter. *See* Harris

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

1  Decl. ¶ 7.  FPI did not dictate any of CFC's policy decisions.  *See id.*  Nor did FPI

2  dictate CFC's day-to-day operations.  *See id.*

### 5.  There Is No Evidence That FPI Is Equitably Estopped From Refusing Arbitration

5  Equitable estoppel also does not apply to this case.  Equitable estoppel

6  "precludes a party from claiming the benefits of a contract while simultaneously

7  attempting to avoid the burdens that contract imposes."  *Comer v. Micor, Inc.*, 436

8  F.3d 1098, 1101 (9th Cir. 2006).  A non-signatory may be bound by an arbitration

9  agreement "where the non-signatory 'knowingly exploits the agreement . . . despite

10  having never signed the agreement.'"  *Id.*

11  FPI is not equitably estopped from refusing to submit to arbitration because

12  FPI never "exploit[ed]" the Employment Agreements or received any benefit from

13  the Employment Agreements.  Plaintiffs cannot provide any evidence that they

14  performed any services for FPI.  Instead, any work that Fischler and Kapel

15  performed while employees of CFC from January 2017 until they became

16  employees of BioZone in July 2017 was performed for CCH, not FPI.  *See supra*

17  § I.B.2.b.  Under the Services Agreement and First Amendment to Services

18  Agreement, CFC ran only its non-flavor business.  *See* Harris Decl. Exs. D & F.

19  Under the APA, CCH was to acquire certain of CFC's assets associated with only

20  its non-flavor business.  *See generally* APA.  And, the Administrative Services

21  Agreement executed in January 2017 confirms that CFC was responsible for

22  running its non-flavor business and would perform services relating to its non-

23  flavor business for CCH.  *See* Harris Decl. Ex. I § 2.01.  In July 2017, Plaintiffs

24  then became full-time employees of BioZone.  *See* Harris Decl. ¶ 18.

### II.  FPI WILL BE IRREPARABLY INJURED ABSENT INJUNCTIVE RELIEF

27  Once a party seeking a preliminary injunction has demonstrated that it is

28  likely to succeed on the merits, it must then show that it is "likely to suffer

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

1    irreparable harm in the absence of preliminary relief."  *Winter*, 555 U.S. at 20.  FPI

2    satisfies this requirement.

3          Multiple Circuits have held that a party is irreparably harmed by incurring

4    costs arbitrating a dispute that a court ultimately concludes is non-arbitrable.  *See,*

5    *e.g., McLaughlin Gormley King Co. v. Terminix Int'l Co.*, 105 F.3d 1192, 1194

6    (8th Cir. 1997) ("If a court has concluded that a dispute is *non*-arbitrable, prior

7    cases uniformly hold that the party urging arbitration may be enjoined from

8    pursuing what would now be a futile arbitration, even if the threatened irreparable

9    injury to the other party is only the cost of defending the arbitration and having the

10   court set aside any unfavorable award."); *see also Merrill Lynch Inv. Managers v.*

11   *Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003) ("[M]ovant 'would be irreparably

12   harmed by being forced to expend time and resources arbitrating an issue that is

13   not arbitrable, and for which any award would not be enforceable.").

14         The Central District and other California federal district courts have held the

15   same.  *See, e.g., Sunlight*, 2015 WL 12655472, at *9 ("[C]ompelling . . . a non-

16   signatory to the [arbitration agreement] to participate in this arbitration constitutes

17   irreparable injury even where the only injury is the cost of defending the arbitration

18   and having the court set aside any unfavorable award."); *see also Pension Plan for*

19   *Pension Tr. Fund for Operating Eng'rs v. Weldway Constr., Inc.*, 920 F. Supp. 2d

20   1034, 1049 (N.D. Cal. 2013) (holding party seeking to enjoin arbitration would

21   "suffer irreparable harm if forced to arbitrate the dispute raised in this case").

22         Forcing FPI to arbitrate claims it did not agree to arbitrate constitutes

23   irreparable harm.  FPI will incur significant costs if forced to arbitrate Plaintiffs'

24   claim for breach of the Employment Agreements.  Moreover, defending against

25   Plaintiffs' arbitration claim will also harm FPI's ability to defend against Plaintiffs'

26   numerous claims in this Court, as FPI will be forced to expend significant time and

27   resources in the Arbitration that could otherwise be used in this case.  The harm

28   suffered by FPI in defending against claims here and in the Arbitration will only be

1  compounded by the fact that Plaintiffs are seeking an improper double recovery of

2  the same compensation under the Employment Agreements here and in the

3  Arbitration.  *See People of the State of Cal. v. Chevron Corp.*, 872 F.2d 1410, 1414

4  (9th Cir. 1989) ("[P]laintiff is not permitted double recovery for what are

5  essentially two different claims for the same injury.").  Consequently, FPI will be

6  irreparably harmed if Plaintiffs are not enjoined from improperly asserting

7  duplicative arbitration claims against FPI.  *Sunlight*, 2015 WL 12655472, at *9.

8  ## III.   THE BALANCE OF EQUITIES FAVORS INJUNCTIVE RELIEF

9          The Court must next identify the harms that a preliminary injunction may

10  cause to Plaintiffs and weigh those harms against FPI's threatened injury.  *See Los*

11  *Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203

12  (9th Cir. 1980).  The balance of equities weighs in favor of FPI.  As discussed

13  above, denying FPI's request for a preliminary injunction would irreparably harm

14  FPI.  *See supra* § II.  By contrast, granting FPI's request for a preliminary

15  injunction would not cause Plaintiffs any hardship.

16          Enjoining Plaintiffs from proceeding with the Arbitration would not harm

17  Plaintiffs as they already assert a claim against Defendants in this Court seeking

18  the *exact same relief* they seek in the Arbitration – *i.e.*, unpaid compensation under

19  the Employment Agreements.  *Compare* FAC ¶ 230 ("Fischler has been damaged

20  by FPI's fraudulent inducement of the Fischler Employment Agreement in an

21  amount equal to the unpaid compensation thereunder[.]"), *and id.* ¶ 231 ("Kapel

22  has been damaged by FPI's fraudulent inducement of the Kapel Employment

23  Agreement in an amount equal to the unpaid compensation thereunder[.]"), *with*

24  Demand ¶¶ 11-17 (seeking an award of damages totaling "over $1.2 million in

25  back payments" allegedly owed under the Employment Agreements).  Enjoining

26  Plaintiffs from asserting their claim in the Arbitration would not harm Plaintiffs

27  because they already seek to recover the same compensation allegedly due under

28  the Employment Agreements in this case.  Plaintiffs are not harmed by an order

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

1  prohibiting them from pursuing an improper double recovery.  *See Chevron Corp.*,

2  872 F.2d at 1414 ("[P]laintiff is not permitted double recovery for what are

3  essentially two different claims for the same injury.").

4       Indeed, in Plaintiffs' Opposition to Defendants' Motion to Dismiss the FAC,

5  Plaintiffs were forced to admit that Plaintiffs were indeed parties to employment

6  agreements with CCH for exclusive full-time employment covering the same time-

7  period of the Employment Agreements.  *See* Dkt. No. 41 at 11:11-16.  Yet,

8  Plaintiffs claim that they are somehow entitled to employment agreements with

9  two separate employers for exclusive, full-time employment for the same time-

10  period.  The Court should not permit Plaintiffs to pursue *two* actions for the *same*

11  *damages* by permitting the Arbitration to proceed.

12       Further, enjoining Plaintiffs from proceeding with the Arbitration would not

13  harm them because they have already demonstrated their interest in pursuing

14  litigation in this Court by asserting nine claims against Defendants in this Court.

15  *See, e.g., Sunlight*, 2015 WL 12655472, at *9 (holding that the balance of equities

16  weighed in favor of party moving to enjoin arbitration where the party opposing

17  the injunction had filed claims in the district court and, thus, "demonstrated its

18  interest in pursuing this litigation in [the district court]").  The balance of equities

19  tips sharply in FPI's favor where, as here, Plaintiffs have already elected to pursue

20  their grievances against FPI – including the exact same claim for relief at issue in

21  the Arbitration – before this Court.

## IV.    THE PUBLIC INTEREST ALSO FAVORS INJUNCTIVE RELIEF

23       In awarding a preliminary injunction, courts consider whether an injunction

24  is in the public interest.  *Winter*, 555 U.S. at 20.  The public interests at stake here

25  weigh in favor of granting an injunction.

26       Public policy would not be served by allowing the improper Arbitration to

27  proceed.  "Generally, the public interest favors resolution of disputes through

28  arbitration rather than litigation."  *Sunlight*, 2015 WL 12655472, at *9.  "However,

1    the policy favoring arbitration is 'based on the presumption that the subject of the

2    arbitration is one that the parties actually agree to arbitrate.'" *Id.* Where, as here,

3    the movant did not agree to arbitration, the "public interest would not be served by

4    allowing the arbitration to proceed." *Id.*; *see also Ingram Micro Inc. v. Signeo*

5    *Int'l, Ltd.*, 2014 WL 3721197, at *5 (C.D. Cal. July 22, 2014) ("Because the Court

6    has determined that the parties have not explicitly agreed to arbitration . . . , the

7    Court also finds that public interest favors an injunction."). FPI never agreed to

8    arbitrate any dispute with Plaintiffs, let alone those relating to the Employment

9    Agreements to which FPI is not, and never was, a party. *See supra* § I.B.1-5. The

10   public interest would not be served in forcing FPI to do so. *See Sunlight*, 2015 WL

11   12655472, at *9.

12       Moreover, the public interest would not be served by permitting Plaintiffs to

13   seek double recovery of unpaid compensation they claim (falsely) to be owed

14   under the Employment Agreements. *See Chevron Corp.*, 872 F.2d at 1414

15   ("[P]laintiff is not permitted double recovery for what are essentially two different

16   claims for the same injury."). Plaintiffs request the exact same relief in the

17   Arbitration and in this Court. *Compare* FAC ¶¶ 230-31, *with* Demand ¶¶ 11-17.

18   There is no public interest in permitting Plaintiffs to prosecute their meritless

19   shakedown of FPI in two separate actions. *See Chevron Corp.*, 872 F.2d at 1414.

20   **V.   NO BOND SHOULD BE REQUIRED**

21       Federal Rule of Civil Procedure 65(c) permits a court to grant preliminary

22   injunctive relief "only if the movant gives security in an amount that the court

23   considers proper to pay the costs and damages sustained by any party found to

24   have been wrongfully enjoined[.]" Fed. R. Civ. P. 65(c). However, "[d]espite the

25   seemingly mandatory language, 'Rule 65(c) invests the district court with

26   discretion as to the amount of security required, *if any*.'" *Johnson v. Couturier*,

27   572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgenson v. Cassiday*, 320 F.3d

28   906, 919 (9th Cir. 2003)). In particular, "[t]he district court may dispense with the

22

1  filing of a bond when it concludes there is no realistic likelihood of harm to the
2  [opposing party] from enjoining his or her conduct." *Jorgensen*, 320 F.3d at 919.
3  Further, "the likelihood of success on the merits, as found by the district court, tips
4  in favor of a minimal bond or no bond at all." *Van De Kamp v. Tahoe Reg'l*
5  *Planning Agency*, 766 F.2d 1319, 1326 (9th Cir. 1985), *amended*, 775 F.2d 998
6  (9th Cir. 1985).

7        The Court should not require a bond because Plaintiffs will not suffer any
8  harm if the Court grants the preliminary injunction.  The injunction neither stops
9  nor disrupts any business of Plaintiffs.  Instead, the injunction merely prevents
10 Plaintiffs from improperly proceeding with the Arbitration until the Court
11 determines whether the parties' dispute is, in fact, arbitrable.  Plaintiffs will remain
12 free to prosecute their meritless claim for unpaid compensation under the
13 Employment Agreements before this Court while the issue of arbitrability as to
14 their duplicative claim in the Arbitration is resolved.  Moreover, FPI has shown
15 that they are likely to prevail on their contention that FPI is *not* obligated to
16 arbitrate its dispute with Plaintiffs.  *See supra* § I.  Consequently, no bond is
17 necessary.  *See Credit Suisse Sec. (USA) LLC v. Chia*, 2013 WL 12114009, at *5
18 (C.D. Cal. Oct. 18, 2013) (preliminarily enjoining investors from proceeding with
19 arbitration and concluding "no bond should be required").

## CONCLUSION

21       For the foregoing reasons, FPI respectfully requests that this Court
22 preliminarily enjoin Plaintiffs from improperly asserting arbitration claims against
23 FPI pending resolution of the issue of arbitrability by this Court.

24 Dated:  June 29, 2020          VENABLE LLP

25           By:  /s/ Alex M. Weingarten
26               Alex M. Weingarten
              Logan M. Elliott

27               *Attorneys for Defendants*
28               Flavor Producers, LLC and Jeffrey
              Harris