**O**

# United States District Court
# Central District of California

FISCHLER KAPEL HOLDINGS, LLC, et al.,

               Plaintiffs,

     v.

FLAVOR PRODUCERS, LLC et al.,

               Defendants.

Case No. 2:19-cv-10309-ODW (GJSx)

**ORDER DENYING DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION [45] AND GRANTING DEFENDANTS' MOTION TO DISMISS [40]**

## I.  INTRODUCTION

On December 4, 2019, Fischler Kapel Holdings, LLC ("FKH"), Richard Fischler ("Fischler"), and Paula Kapel ("Kapel") (collectively, "Plaintiffs") initiated this action against Flavor Producers, LLC ("FPI") and Jeffrey Harris ("Harris") (collectively, "Defendants"). (Compl., ECF No. 1.) On May 1, 2020, Plaintiffs filed a First Amended Complaint ("FAC"), and Defendants moved to Dismiss on May 29, 2020. (FAC, ECF No. 36; Mot. Dismiss, ECF No. 40.) On June 29, 2020, Defendant FPI moved for a preliminary injunction to prohibit Plaintiffs from pursuing arbitration of a breach of contract claim against the company. (Mot. Prelim. Inj., ECF No. 45.) For the reasons discussed below, the Court **DENIES** FPI's Motion for

Preliminary Injunction and **GRANTS** Defendants' Motion to Dismiss Plaintiffs' FAC.[1]  (ECF Nos. 45, 40.)

## II.   FACTUAL BACKGROUND

At the heart of Plaintiffs' numerous allegations are the core accusations that Defendants manufactured fraudulent financial information and made several false representations related to the financial health of certain companies to lure Plaintiffs into entering unprofitable employment agreements and investing into a failing company.  (*See* FAC ¶ 1.)  The Court summarizes the allegations for the purposes of ruling on Defendants' Motions.

### A.   CFC Acquisition

Fischler and Kapel's company, Creative Flavor Concepts, Inc. ("CFC") had two businesses:  (1) the design and manufacture of flavors that it sold to sellers of food, beverage, sports nutrition, and dietary products ("Flavor Business"); and (2) the manufacture of food, beverage, sports nutrition, and dietary products that it sold directly to retail brands and manufacturers ("Non-Flavor Business").  (*Id.* ¶¶ 27–29.)

In 2015, Harris, on behalf of FPI, pitched the concept of FPI purchasing CFC. (*Id.* ¶ 34.)  The parties engaged in negotiations through over-the-phone and in-person meetings.  (*Id.* ¶¶ 38, 40.)  Plaintiffs allege that during these meetings, Harris and David Bergstein (FPI's agent), represented to Fischler that they wished to maximize CFC's revenues and income.  (*Id.* ¶¶ 40, 87.)  The meetings led to a stock acquisition agreement ("CFC Purchase Agreement") in June 2015, where ultimately, FPI and CFC agreed that FPI would purchase a majority interest in CFC ("CFC Acquisition").  (*Id.* ¶¶ 38, 77.)  During these negotiations the parties agreed that, as part of the CFC Acquisition, Fischler and Kapel would enter into seven-year employment agreements ("CFC Employment Agreements").  (*Id.* ¶ 42.)  Additionally, FPI incorporated CFCAC, Inc., a newly formed corporate entity of FPI.  (*Id.* ¶ 43.)  Plaintiffs allege that

---

[1] After considering the papers submitted in connection with the Motions, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

during the negotiations of the CFC Acquisition, Harris and Bergstein made false representations regarding their intent to maximize the value of CFC.  (*Id.* ¶¶ 210–12.)

**B.     Amendments to CFC Acquisition Documents**

In March 2016, Defendants required that the parties amend certain CFC Acquisition documents, and thus CFCAC, CFC, Fischler, and Kapel entered into the First Amendment to Stock Purchase and Redemption Agreement ("Amended CFC Purchase Agreement").  (*Id.* ¶¶ 101–06.)  Plaintiffs allege the Amended CFC Purchase Agreement contemplated that FPI would acquire CFC's Flavor Business for an amount equal to the Flavor Business's fair value.  (*Id.* ¶ 103.)  According to Plaintiffs, during negotiations for the Amended CFC Purchase Agreement, Harris and Bergstein also represented to Fischler (in person, during meetings, and by telephone) that they wished to maximize the revenues of CFC but that those representations were false. (*Id.* ¶¶ 107–08.)

On or around March 4, 2016, CFC and FPI entered into a First Amendment to Service Agreement that required FPI to pay CFC a flat fee and allowed FPI to receive and retain all revenues from the business referred by CFC.  (*Id.* ¶¶ 111, 113.)  Plaintiffs allege that through these agreements FPI was allowed to manipulate the value of CFC and drive it down, to allow FPI to purchase CFC at a bargain.  (*Id.* ¶¶ 115–30.)

**C.     CFC Asset Sale**

Plaintiffs allege that in January 2017, "FPI's scheme came to fruition"; "[b]ecause of [FPI's] actions, FPI and a wholly owned subsidiary [Creative Concepts Holdings, LLC ("CCH")] acquired the majority interest in CFC at a markedly reduced price, [and thus] Fischler and Kapel had no option but to proceed with [an] asset sale as FPI, Harris[,] and Bergstein intentionally gutted the CFC business."  (*Id.* ¶ 131.)  On April 28, 2017, FPI, CCH, and CFC entered into an Asset Purchase Agreement, in which "FPI purchased the Flavor Business and CCH purchased the Non-Flavor Business ("CFC Asset Sale").  (*See id.* ¶¶ 134, 136.)  In exchange for the Non-Flavor

Business, CCH issued a 22% membership interest in CCH ("CCH Stock"), which was distributed to Fischler and Kapel. (*Id.* ¶ 138.) Fischler and Kapel contributed that 22% membership interest in CCH to FKH. (*Id.* ¶ 139.)

On May 12, 2017, Defendants formed CCH Acquisition Group, LLC ("CAG") to "spinoff" the stock or assets of CCH. (*Id.* ¶ 154.) Plaintiffs allege, upon information and belief, that FPI transferred its interest in CCH to CAG "as part of a large-scale plan to transfer all stock in CCH to CAG, and reduce FPI's ownership by soliciting additional investors ('CCH Spinoff')." (*Id.* ¶ 155.) Plaintiffs claim that in May 2017, Bergstein and Harris "prepared fraudulent financial information pertaining to CCH" and its wholly owned subsidiary Biozone Laboratories, Inc. ("Biozone") and disseminated that information to potential CAG investors, including Plaintiffs. (*Id.* ¶ 156.) Plaintiffs allege that in reliance on FPI, Harris, and Bergstein's fraudulent representations, FKH transferred its interest in CCH to CAG, in exchange for an interest in CAG. (*Id.* ¶¶ 171–75.) But had FKH been aware of the true financial status of CAG and its subsidiaries, it would not have invested in CAG. (*Id.* ¶ 173.)

**D.  Biozone Employment Agreements**

On July 1, 2017, Plaintiffs allege that, in reliance on Defendants' fraudulent financial representations, Fischler and Kapel agreed to employment with Biozone ("Biozone Employment Agreements"). (*Id.* ¶¶ 180–81.) The Biozone Employment Agreements provided lower base compensation than Fischler and Kapel normally received, and a bonus structure based on CAG's earnings. (*Id.* ¶¶ 181–82.) Plaintiffs allege that they would not have agreed to the Biozone Employment Agreements had Defendants been honest about the financial health of CCH and Biozone. (*Id.* ¶ 258.) Fischler and Kapel claim they received $233,333 and $87,500 less compensation, respectively, than they would have if they were not fraudulently induced into the agreements. (*Id.* ¶¶ 259–60.)

**E.    Plaintiffs File Claims for Fraudulent Inducement and Securities Fraud**

On January 4, 2019, Plaintiffs initiated this action against Defendants, and filed their FAC on May 1, 2020.  In the FAC, Plaintiffs allege several claims related to their business dealings with Defendants: (1) fraudulent inducement of the CFC Acquisition; (2) fraudulent inducement of the CFC Employment Agreements; (3) fraudulent inducement of the CFC Asset Sale; (4) fraudulent inducement of the Biozone Employment Agreements;  (5) fraudulent  inducement  of  the  CCH  Spinoff; (6) fraudulent inducement of the CAG investment; (7) securities fraud (FKH against Defendants); (8) securities fraud (Fischler and Kapel against Defendants); and (9) securities  fraud  (scheme  liability).   On  May  29,  2020,  Defendants  filed  their Motion to Dismiss Plaintiffs' FAC.

**F.    Arbitration Before JAMS**

In  April  2020,  Plaintiffs  commenced  arbitration  against  FPI  before  JAMS asserting  a  claim  for  breach  of  contract  related  to  the  CFC  Employment  Agreements ("Arbitration").  (Mot. Prelim. Inj. 1–2.)  FPI contends that Arbitration is improper because  FPI  is  not  a  party  to  the  CFC  Employment  Agreements  and  never  assumed the agreements, and that Plaintiffs' arbitration claim is duplicative of the claims in the FAC.  (*Id.*)  On April 30, 2020, FPI filed an objection in the Arbitration "on the grounds that JAMS lacked jurisdiction over the Plaintiffs' claims because FPI is not a party"  to  the  CFC  Employment  Agreements.   (*Id.* at 8.)   After  considering  the  full briefing  on  the  issue,  JAMS  issued  a  notice  stating  that  "[the]  arbitrator  has  the authority to determine jurisdictional issues as a preliminary matter" and informed the parties that "[a]ccordingly, JAMS will proceed with the administration of this matter." (Decl. of Jeffrey Harris ("Harris Decl."), ¶ 30, Ex. S, ECF Nos. 45-2, 45-21.)

On June 5, 2020, JAMS issued a Notice of Commencement of Arbitration, and in response FPI notified JAMS and Plaintiffs that it objected to the Arbitration and planned to file a motion for preliminary injunction.  (*Id.* ¶¶ 31–32, Exs. T–U, ECF

Nos. 45-22, 45-23.)  On June 29, 2020, Defendants filed their Motion for Preliminary Injunction.

### III.   PRELIMINARY INJUNCTION

The Court first addresses FPI's motion for preliminary injunction to enjoin Plaintiffs from pursuing Arbitration for a breach of contract claim related to the CFC Employment Agreements formed in June 2015.  (*See* Mot. Prelim. Inj. 1.)  For the following reasons, the Court **DENIES** FPI's motion.

### A.   Legal Standard

Federal Rule of Civil Procedure ("Rule") 65 governs the issuance of preliminary injunctions.   "An injunction is an exercise of a court's equitable authority," which should not be invoked as a matter of course, but "only after taking into account all of the circumstances that bear on the need for prospective relief." *Salazar v. Buono*, 559 U.S. 700, 714 (2010).  To obtain a preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of the equities tips in the moving party's favor; and (4) that an injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Id.* at 22.  The moving party bears the burden of meeting all four *Winter* elements.  *DISH Network v. FCC*, 653 F.3d 771, 776–77 (9th Cir. 2011).

### B.   Discussion

FPI seeks a preliminary injunction to prohibit Plaintiffs from pursuing a breach of contract claim against FPI in Arbitration.  (*See* Mot. Prelim. Inj. 1.)  As previously mentioned, FPI contends the claim in Arbitration is duplicative of a claim Plaintiffs assert in this case concerning the CFC Employment Agreements, and that because FPI is not a party to the CFC Employment Agreements, the arbitrator lacks jurisdiction to decide the dispute.  (*Id.*)  Thus, on these grounds FPI moves to enjoin Plaintiffs and

1    argues that this Court—not the arbitrator—must decide the threshold issue of
2    arbitrability.  (*Id.*)  In opposition, Plaintiffs assert that the Court lacks the authority to
3    grant FPI's motion for preliminary injunction because the issue of whether the
4    arbitration agreement is enforceable against FPI is outside the scope of the issues
5    presented in Plaintiffs' FAC.  (*See* Opp'n Mot. Prelim. Inj. 10, ECF No. 46.)

6        A preliminary injunction is appropriate only where it "grant[s] intermediate
7    relief of the same character as that which may be granted finally," and does not "deal[]
8    with a matter lying wholly outside the issues in the suit."  *De Beers Consol. Mines v.*
9    *United States*, 325 U.S. 212, 220 (1945); *see also Profil Institut Fur*
10   *Stoffwechselforschung GmbH v. ProSciento, Inc.*, No. 3:16-cv-01549-LAB (BLM),
11   2017 WL 1394089, at *1 (S.D. Cal. Feb. 28, 2017) ("Federal courts can issue
12   preliminary injunctions only to the extent they pertain to pending underlying claims—
13   in other words, where the preliminary injunction would temporarily grant the same
14   kind of relief as the underlying claims, if successful, would ultimately merit." (citing
15   *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir.
16   2015))).  Thus, absent a relationship between the injury claimed in the motion for
17   injunctive relief and the conduct asserted in the complaint "the district court lacks
18   authority to grant the relief requested."  *Pac. Radiation*, 810 F.3d at 636.

19       Here, FPI has no claim presently before the Court upon which it could issue
20   final relief comparable to the intermediate relief that FPI seeks.  *See De Beers*,
21   325 U.S. at 220.  FPI is a defendant in this action and has not filed a complaint or
22   counterclaim.  While Plaintiffs bring myriad claims for fraudulent inducement and
23   seek monetary damages for their alleged harm, if Plaintiffs do not ultimately prevail
24   on their claims, FPI would not be entitled to any final relief.  (*See generally* FAC.)  As
25   another district court has explained: "Where, as here, the party is bringing no claims,
26   there is no basis for issuance of a preliminary injunction.  And in fact, the Court lacks
27   authority to do so."  *ProSciento*, 2017 WL 1394089, at *1 (citing *Pac. Radiation*,
28   810 F.3d at 636).  FPI has no underlying claim, thus the Court finds that it lacks

1  authority to grant FPI's request for intermediate relief.  *See Pac. Radiation*, 810 F.3d
2  at 636.   Therefore, FPI's Motion for Preliminary Injunction is **DENIED**.  (ECF
3  No. 45.)

4  ## IV.   MOTION TO DISMISS

5      Next, the Court addresses Defendants' Motion to Dismiss Plaintiffs' FAC
6  pursuant to Rule 12(b)(6) for failure to state a claim.  (Mot. Dismiss 7.)   First,
7  Defendants contend that Plaintiffs' fraudulent inducement claims (claims one through
8  six) fail as a matter of law because Plaintiffs' allegations fail to satisfy the heightened
9  pleading requirements of Rule 9(b).  (*Id.* at 7–8.)  Second, Defendants assert that the
10  economic loss-doctrine bars Plaintiffs' claims related to the employment agreements
11  (claims two and four).   (*Id.* at 13–14, 16–17.)   Finally, Defendants argue that
12  Plaintiffs' claims for securities fraud (claims seven through nine) fail because (1) the
13  statements are barred by the Private Securities Litigation Reform Act of 1995
14  ("PSLRA") "safe harbor"; (2) Plaintiffs fail to allege facts that demonstrate
15  Defendants made an actionable misrepresentation; and (3) Plaintiffs do not adequately
16  allege scheme liability.  (*Id.* at 18–25.)

17  ### A.   Legal Standard

18      Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal
19  theory or the absence of sufficient facts alleged under a cognizable legal theory."
20  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  "To survive a
21  motion to dismiss . . . under Rule 12(b)(6), a complaint generally must satisfy only the
22  minimal notice pleading requirements of Rule 8(a)(2)"—a short and plain statement of
23  the claim.  *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003); *see also* Fed. R. Civ.
24  P. 8(a)(2).  The "[f]actual allegations must be enough to raise a right to relief above
25  the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The
26  "complaint must contain sufficient factual matter, accepted as true, to state a claim to
27  relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)
28  (internal quotation marks omitted).  "A pleading that offers 'labels and conclusions' or

'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing *Twombly*, 550 U.S. at 555).

Whether a complaint satisfies the plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe "[a]ll factual allegations set forth in the complaint . . . as true and . . . in the light most favorable to [the plaintiff]." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless "it is clear . . . the complaint could not be saved by any amendment." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1034 (9th Cir. 2008); *see* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires").

**B.   Plaintiffs' Fraudulent Inducement Claims Fail**

In claims one through six, Plaintiffs allege that Defendants fraudulently induced them to enter into the: (1) CFC Acquisition, (2) CFC Employment Agreements, (3) CFC Asset Sale, (4) Biozone Employment Agreements, (5) CCH Spinoff, and (6) CAG investment. (FAC ¶¶ 206–345.) Defendants contend that Plaintiffs' claims fail to satisfy Rule 9(b)'s heightened pleading requirements for allegations of fraud. (Mot. Dismiss 8–18.)

*1.   Plaintiffs Fail to Satisfy Rule 9(b)'s Heightened Pleading Requirements*

"To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint generally must satisfy only the minimal notice pleading requirements of Rule 8(a)(2)." *Porter*, 319 F.3d at 494. However, "where a complaint includes allegations of fraud, [Rule] 9(b) requires more specificity including an account of the 'time, place, and specific content of the false representations as well as the identities

of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)).   Plaintiffs must also set forth "what is false or misleading about the purportedly fraudulent statement, and why it is false." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (quoting *Cafasso, U.S. ex rel v. Gen. Dynamics C4 Sys. Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (same).   Thus, to satisfy the requirements of Rule 9(b) "the circumstances constituting the alleged fraud must be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess*, 317 F.3d at 1106 (internal quotation marks omitted).   "[M]ere conclusory allegations of fraud are insufficient," and "[b]road allegations that include no particularized supporting detail do not suffice." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016).

> ### i.   Claim One

To support their first claim (fraudulent inducement of the CFC acquisition), Plaintiffs allege that "Harris and Bergstein both represented to Fischler that they wished to maximize the revenues" of CFC during the negotiation of the CFC Purchase Agreement (from January 2015 to June 2015) and during the negotiation of the Amended CFC Agreement (from January 2015 to March 2016).   (Opp'n Mot. Dismiss 8, ECF No. 41 (citing FAC ¶¶ 87, 107).)   According to Plaintiffs, Harris and Bergstein's representations regarding maximizing CFC's revenue were false because they "had no intention of maximizing revenue."   (*Id.* at 9 (citing FAC ¶¶ 88, 108).) Plaintiffs further allege that Harris and Bergstein made these representations "in person, during meetings, and by telephone" throughout the fifteen-month period.   (*Id.* at 8 (citing FAC ¶¶ 40, 87, 107).)

Defendants contend that Plaintiffs' allegations fail to satisfy Rule 9(b) because they do not specifically allege "what representations were made, who made each

1  representation, when, where, or to whom each representation was made, or why any

2  alleged representation was false." (*Id.* at 9.) The Court agrees.

3  To start, Plaintiffs do not plead the content of the purported representations, and

4  thus their allegations as to "what" fraudulent representations were made are deficient

5  under Rule 9(b). *See UMG Recordings, Inc. v. Global Eagle Ent., Inc.*, 117 F. Supp.

6  3d 1092, 1106 (C.D. Cal. 2015) (explaining that general allegations are insufficient,

7  plaintiffs must state the "specific content of the false representations.") In the FAC,

8  Plaintiffs rely solely on the allegations that over the course of fifteen months Harris

9  and Bergstein falsely "represented" that they wished to maximize CFC's revenues.

10  (Opp'n Mot. Dismiss 8 (citing FAC ¶¶ 87, 107).) Based on these allegations, it is not

11  clear what Harris and Bergstein specifically represented to Fischler regarding their

12  "wish" to maximize the revenues of CFC. (*See id.*) Plaintiffs' allegations are utterly

13  deficient and cannot support fraudulent inducement claims; Plaintiffs must

14  specifically allege the content of Harris and Bergstein's purported representations that

15  they "wished to maximize" the CFC revenues so that Defendants can adequately

16  defend against Plaintiffs' claims. *See Vess*, 317 F.3d at 1106; *see also Swartz*,

17  476 F.3d at 764 (explaining that Rule 9(b) requires an account of the content of the

18  allegedly false representations).

19  With respect to "when"—Plaintiffs allege the representations were made

20  "several times throughout the period from January 2015 through March 2, 2016"—a

21  fifteen-month time frame. (Opp'n Mot. Dismiss 8 (citing FAC ¶¶ 87, 107).)

22  However, Plaintiffs' allegations do not "specify the time and date" of the alleged

23  misrepresentations, and thus do not satisfy Rule 9(b) for this additional reason. *See,*

24  *e.g.*, *R Power Biofuels, LLC v. Chemex LLC*, No. 16-CV-00716-LHK, 2016 WL

25  6663002, at *13 (N.D. Cal. Nov. 11, 2016) ("[S]pecifying an eight-month time-frame

26  is not significantly more specific than stating 'in 2011 and 2012.' With allegations of

27  'repeated' conversations over an eight-month time[-]frame . . . it is unclear how

28  [d]efendant will be able to identify the particular conversation at issue.").

11

The allegations concerning "where" the representations were made are equally deficient. Plaintiffs rely solely on the allegations that the representations were made "in the course of several phone calls and in[-]person meetings." (Opp'n Mot. Dismiss 8 (citing FAC ¶¶ 87, 107).) But such vague allegations do not put Defendants on notice as to where these various in-person meetings and conversations took place.

Finally, Plaintiffs fail to allege what was false or misleading about the purported representations that Harris and Bergstein wished to maximize the revenues of CFC (*see* FAC ¶¶ 87, 108), and why they were false when made, *see Vess*, 317 F.3d at 1106 ("The plaintiff must set forth what is false or misleading about a statement, and why it is false."). Plaintiffs' conclusory allegations that the purported representations were false because Defendants "had no intention of maximizing revenue" do not suffice. (Mot. Dismiss 9); *see United Healthcare Ins. Co.*, 848 F.3d at 1180 ("[M]ere conclusory allegations of fraud are insufficient.").

### ii.   Claims Two, Three, Four, Five, and Six

Plaintiffs' other fraudulent inducement claims (claims two through six) suffer from the same deficiencies. (*See* FAC ¶¶ 217–91.) In support of claim two (fraudulent inducement of the CFC Employment Agreements), Plaintiffs allege only that (1) FPI assumed the agreements as part of the CFC Asset Sale, and (2) prior to entering into the agreements, Harris confirmed that he was prepared for FPI to pay Fischler and Kapel under the terms of the agreements. (*Id.* ¶¶ 223–26.) But Plaintiffs' well-plead allegations do not set forth when the purported fraudulent statement was made, why the statement was false, or that the statement was false when it was made. (*See generally id.*)

In support of claims three through six, Plaintiffs allege Harris and Bergstein made fraudulent representations during the CFC Asset Sale, CCH Spinoff, and CAG investment regarding the value of CCH Stock and the financial health of CCH and Biozone. (*Id.* ¶¶ 236, 250–52, 271, 282–83.) These representations were allegedly made "during in-person meetings and telephone calls and by email." (*Id.* ¶¶ 235–36,

270, 282.)  The allegations in support of these fraud based claims, however, also fail to meet the heightened pleadings requirements of Rule 9(b).

For example, Plaintiffs fail to allege that a false representation was made regarding the CFC Asset Sale (third claim), or when the purported false representation was made.  (Mot. Dismiss 15–16 (citing FAC ¶¶ 236–241).)  Plaintiffs further allege in conclusory fashion that the representations concerning the CFC Asset Sale were false when they were made, but as noted, such conclusory allegations are insufficient under Rule 9(b).  (*See* FAC ¶ 237.)  Additionally, Plaintiffs allege that the term sheet and other financial representations that Bergstein emailed Fischler (underlying their fourth, fifth, and sixth claims) were false, but fail to put forth any specific factual allegations to support that matter-of-fact conclusion.  (*See id.* ¶¶ 251–57, 269–71, 282–87, 157–65.)  At bottom, Plaintiffs fail to put forth specific allegations to support any of their fraud based claims, and instead rely on vague assertions and conclusory allegations. *See United Healthcare*, 848 F.3d at 1180 ("[M]ere conclusory allegations of fraud are insufficient," and "[b]road allegations that include no particularized supporting detail do not suffice.").

### iii.    Conclusion

In sum, while Plaintiffs claim their 345-paragraph FAC is "painstakingly detailed" (*see* Opp'n Mot. Dismiss 1), Plaintiffs do not sufficiently support their accusations that Defendants made fraudulent representations, *see, e.g.*, *In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1153 (C.D. Cal. 2007) ("A complaint can be long-winded, even prolix, without pleading with particularity.  Indeed, such a garrulous style is not an uncommon mask for an absence of detail." (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997))).

Therefore, Plaintiffs' claims that are premised on purported fraudulent representations related to the CFC, CCH, and CAG business dealings (claims one, two, three, four, five, and six) are **DISMISSED**.  As it is not clear that amendment

would be futile, the Court **GRANTS** Plaintiffs leave to amend claims one and three through six.

        2.     *The Economic Loss Doctrine Bars Plaintiffs' Second Claim*

Defendants contend that Plaintiffs' second claim (fraudulent inducement of the CFC Employment Agreements) should be dismissed with prejudice because it is barred by the economic loss doctrine. (Mot. Dismiss 13–14, 25.) "The economic loss [doctrine] generally provides that parties who allege purely economic injuries from the breach of a contract must sue in contract, rather than in tort." *Veasna Chan Hun v. Hajjar*, No. CV 18-10330 PSG (KSx), 2019 WL 4509302, at *7 (C.D. Cal. May 30, 2019) (citing *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004)). A party that alleges only economic loss from a contractual breach is thus limited to contract remedies, "unless [it] can demonstrate harm above and beyond a broken contractual promise." *Robinson*, 34 Cal. 4th at 988. In sum, under the economic loss doctrine "no tort cause of action will lie where the breach of duty is nothing more than a violation of a promise which undermines the expectations of the parties to an agreement." *JMP Sec. LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029, 1042 (N.D. Cal. 2012).

Here, Plaintiffs' allegations underlying their second claim are based on solely on FPI's purported promise to pay Plaintiffs pursuant to the terms of the CFC Employment Agreements, and FPI's subsequent failure to pay Plaintiffs the amounts owed under those agreements. (*See* FAC ¶¶ 222, 224.) In other words, Plaintiffs allege only *economic losses* based on a purported broken promise related to the employment agreements. (*See, e.g.*, *id.* ¶¶ 230–31 ("[Plaintiffs] ha[ve] been damaged by FPI's fraudulent inducement of the [CFC Employment Agreements] in an amount equal to the unpaid compensation thereunder.").) It is clear then that Plaintiffs' allegations fail to allege harm beyond a broken contractual promise, and therefore cannot support a fraud claim. *See Robinson*, 34 Cal. 4th at 988; *see also Veasna Chan Hun*, 2019 WL 4509302, at *7 ("A fraudulent [inducement] claim must be based on

something other than simply a claim that the plaintiff was induced to enter into a contract by a promise that the defendant would perform its contractual obligations.")

The Court perceives no way that Plaintiffs could successfully frame their second claim for fraudulent inducement of the CFC Employment Agreements by amending their pleadings. No matter how the allegations are framed, Plaintiffs' second claim falls within the scope of the economic loss doctrine. Accordingly, this claim is **DISMISSED without leave to amend**. *See Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011) (explaining that leave to amend "is properly denied . . . if amendment would be futile.").

**C.   Plaintiffs Fail to State a Claim for Securities Fraud**

Plaintiffs also assert three claims for securities fraud under Section 10(b) of the Securities Exchange Act of 1934, related to the CAG investment and CFC Acquisition (claims seven through nine). (FAC ¶¶ 292–345.)

Defendants contend that Plaintiffs fail to allege a claim for securities fraud under Rule 10b-5 because: (1) Plaintiffs' claims are barred by the PSLRA "safe harbor"; (2) Plaintiffs fail to plead an actionable misrepresentation; and (3) Plaintiffs fail to plead a manipulative act. (Mot. Dismiss 19–24.)

     *1.   Rule 10-b(5) and the PSLRA "Safe Harbor"*

Section 10(b) of the Securities and Exchange Act of 1934 makes it unlawful "[t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe."  15 U.S.C. § 78j(b).  Pursuant to this section, the Securities and Exchange Commission promulgated Rule 10b-5, which makes it unlawful, in connection with the purchase or sale of any security:

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made . . . not misleading, or[,]

> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person . . . .

17 C.F.R. § 240.10b-5.   Rule 10b-5(b) applies to misrepresentation or omission claims, and Rules 10b-5(a) and (c) apply to scheme liability claims.   *See, e.g.*, *In re CytRx Corp. Sec. Litig.*, No. CV 14-1956-GHK (PJWx), 2015 WL 5031232, at *3–4 (C.D. Cal. July 13, 2015); *Oaktree Prinicpal Fund V, LP v. Warburg Pincus LLC*, No. CV 15-8574 PSG (MRWx), 2016 WL 6782768, at *14 (C.D. Cal. Aug. 9, 2016).

Additionally, the PSLRA safe harbor provides a defensive "barrier at the pleading stage" for "forward-looking statements," such as "projection of revenues, income (including income loss), earnings . . . or other financial items." *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010) (citing 15 U.S.C. § 78u-5(i)(1)(A)). For forward-looking statements to fall under the safe harbor, they must be accompanied by "meaningful cautionary" language that identifies "important factors that could cause actual results to differ materially from those in the forward-looking statement[s]." *Id.* (quoting 15 U.S.C. § 78u-5(c)(1)(A)(i)).

### 2.   *The PSLRA Safe Harbor Does Not Apply*

Defendants contend that the PSLRA safe harbor applies to Plaintiffs' Rule 10b-5(b) claims because they "rely on allegations regarding 'forward-looking'" projections regarding "future revenue, gross profits, cash, and cash equivalents" pertaining to CCH and Biozone.   (Mot. Dismiss 19–20.)   Plaintiffs argue that the relevant statements are not forward-looking.   (Opp'n Mot. Dismiss 19 (citing FAC ¶ 166 (alleging that the 2017 projected balance sheet stated how much CCH "***possessed*** . . . [in] cash [and] cash equivalents." (emphasis added))).)   Regardless of whether the purported representations are "forward-looking," the representations, as alleged in the FAC, do not fall under the PSLRA safe harbor.   First, Plaintiffs do not allege the representations contained cautionary language.   (*See generally* FAC.) Second, Defendants do not argue their purported forward-looking statements were accompanied by any meaningful cautionary language.   (*See generally* Mot. Dismiss;

Reply (lacking any argument that the purported statements were accompanied by any cautionary language, as required to fall under the PSLRA safe harbor).)

       3.     *Plaintiffs Fail to Plead a Claim Under Rule 10b-5(b)*

Although the purported financial representations are not protected by the safe harbor, Plaintiffs still fail to state a claim for securities fraud under Rule 10b-5(b) (claims seven and eight). The heightened pleading requirements are "no small hurdle" for a plaintiff alleging securities fraud; they require that "[a] complaint under § 10(b) and Rule 10b-5 . . . satisfy the dual pleading requisites of [Rule] 9(b) and the PSLRA." *In re Verifone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012). Rule 9(b) requires that the allegations are pleaded with particularity, including an account of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz*, 476 F.3d at 764. And the PSLRA "mandates that 'the complaint shall specify each statement alleged to have been misleading, and the reason or reasons why the statement is misleading.'" *In re Verifone*, 704 F.3d at 701 (brackets omitted) (quoting 15 U.S.C. § 78u-4(b)(1)(B)). If allegations regarding a false statement under the securities act are based on information and belief, the plaintiff must "state with particularity all facts on which that belief is formed." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009), *as amended* (Feb. 10, 2009).

Plaintiffs aver upon information and belief that in May 2017, Bergstein formed CAG to allow for a spinoff of CCH's stock and assets. (FAC ¶ 294.) Plaintiffs further allege, upon information and belief that in May 2017, Bergstein "prepared fraudulent financial information pertaining to CCH and Biozone" that included "grossly inflated" numbers for CCH and Biozone, which he later emailed to potential investors including Plaintiffs. (*Id.* ¶¶ 165, 297.) For example, according to Plaintiffs, Bergstein emailed Fischler the term sheet, summary financials, and the presentation related to CAG that indicated, "CCH has a very strong balance sheet with $21 [m]illion in assets and $2.8 [m]illion in liabilities." (*Id.* ¶ 299.) Plaintiffs allege

that the financial information related to CCH and Biozone (CAG's subsidiaries) "were false" and "Fischler was induced to make a loan to CCH in the amount of $145,000 and Kapel was induced to make a loan to CCH in the amount of $50,000." (*Id.* ¶¶ 302–04.)   Finally, Plaintiffs allege, "[w]hen the misrepresentations made by Defendants regarding the financial health of CAG, CCH[,] and Biozone came to light, the value of the CAG stock massively declined in value," and that this decline damaged Plaintiffs. (*Id.* ¶ 306.)

Plaintiffs' Rule 10b-5(b) claims are plagued by the same deficiencies found throughout the FAC—the allegations are vague and lack the specificity that Rule 9(b), and here, the PSLRA, mandate. First, Plaintiffs fail to sufficiently allege facts to support that the financial information purportedly presented in the term sheet, summary financials, and presentation were false. Plaintiffs offer only the conclusory allegation that the "representations were false at the time [FPI and Bergstein] made them." (FAC ¶¶ 302–03). These allegations are insufficient to support a claim for securities fraud. *See Ark. Teacher Ret. Sys. v. OSI Sys., Inc.*, No. 2:17-cv-08841-VAP-(SKx), 2019 WL 2895625, at *4 (C.D. Cal. May 7, 2019) (dismissing a Rule 10b-5(b) claim where the plaintiffs' complaint was "no more than a litany of alleged false statements, unaccompanied by the pleading of specific facts indicating why those statements [were] false." (brackets omitted) (quoting *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1070–72 (9th Cir. 2008))).

Second, Plaintiffs attempt to support their securities fraud claims with allegations based only on "information and belief" that the numbers in the financial reports were "grossly inflated" (FAC ¶ 165), yet Plaintiffs fail to "state with particularity all facts on which that belief is formed," *see Zucco*, 552 F.3d at 991. In addition, the PSLRA mandates that Plaintiffs "specify each statement alleged to have been misleading, and the reason or reasons why the statement is misleading," which Plaintiffs fail to do. *See Verifone*, 704 F.3d at 701. Thus, Plaintiffs cannot rely on their deficient allegations to support claims under Rule 10b-5(b).

4.     *Plaintiffs Fail to Plead a Claim Under Rule 10b-5(a) and (c)*

Plaintiffs' claim for scheme liability under Rule 10b-5(a) and (c) (claim nine) also fails to satisfy the heightened pleading requirements of Rule 9(b).  *See Oregon Pub. Employees Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014) (explaining that "Rule 9(b) applies to all elements of a securities fraud action."). Here, Plaintiffs rely on the same deficient allegations that from June 2015 through March 2016, Harris and Bergstein falsely represented that they wished to maximize the revenues and earnings of CFC during in-person meetings and by telephone.  (FAC ¶¶ 337–43.)   As the Court previously held, these allegations do not satisfy the requirements of Rule 9(b); they fail to establish specifically what representations were made, when they were made, and that the representations were false when made.  *See Vess*, 317 F.3d at 1106.

Accordingly, Plaintiffs' claims for securities fraud under Rules 10b-5(b), (a), and (c) (claims seven through nine) are **DISMISSED**. As it is not clear that amendment would be futile, the Court **GRANTS** Plaintiffs leave to amend these claims.

///
///
///
///
///
///
///
///
///
///
///
///

///

## V.   CONCLUSION

For the reasons discussed above, the Court hereby **DENIES** FPI's Motion for Preliminary Injunction.  (ECF No. 45.)  The Court **GRANTS** Defendants' Motion to Dismiss claims one, three, and four through nine **with leave to amend**, and claim two **without leave to amend**.  (ECF No. 40.)   If Plaintiffs choose to amend their pleadings, they shall file a second amended complaint ("SAC") in conformance with this Order no later than **twenty-one (21) days** from the date of this Order.  If Plaintiffs file a SAC, Defendants shall file a response no later than **fourteen (14) days** from the date of the SAC filing.

**IT IS SO ORDERED.**

November 25, 2020

_____
   **OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**