# United States District Court
# Central District of California

| | |
|---|---|
| FISCHLER KAPEL HOLDINGS, LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>FLAVOR PRODUCERS, LLC, et al.,<br><br>Defendants. | Case № 2:19-cv-10309-ODW (GJSx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS THE SAC [60] AND DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND [65]** |

## I. INTRODUCTION

Plaintiffs Fischler Kapel Holdings, LLC ("FKH"), Richard Fischler, and Paula Kapel bring a Second Amended Complaint ("SAC") against Defendants Flavor Producers, LLC ("FPI") and Jeffrey Harris. (SAC, ECF No. 57.) Before the Court are Defendants' Motion to Dismiss the SAC, and Plaintiffs' Motion for Leave to File a Third Amended Complaint. (Mot. Dismiss SAC ("MTD"), ECF No. 60; Mot. Amend, ECF No. 65.) Both Motions are fully briefed. (*See* Opp'n MTD, ECF No. 61; Reply MTD, ECF No. 63; Opp'n Mot. Amend, ECF No. 70; Reply Mot. Amend, ECF No. 71.) As detailed below, Defendants' Motion to Dismiss is **GRANTED in part** and **DENIED in part**, and Plaintiffs' Motion for Leave to Amend is **DENIED**.[1]

---

[1] After carefully considering the papers filed in connection with the Motions, the Court deemed the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

The pleadings in this action are a jumbled mess. The facts of this case have more or less been detailed in a prior order, the relevant portions of which are hereby incorporated by reference. (*See* Order Denying Mot. Prelim. Inj. & Granting Mot. Dismiss FAC ("Prior Order"), ECF No. 49.) In short, Plaintiffs accuse Defendants of creating fraudulent financial information or reports and making false representations as to the finances of companies to induce Plaintiffs to enter unprofitable agreements and investments. (*See id.* at 2–5; Second Am. Compl. ("SAC"), ECF No. 57.) Specifically, in the SAC, Plaintiffs allege two sets of alleged misrepresentations.

### A. First Alleged Misrepresentation – Desire to Maximize CFC Revenue

The first alleged misrepresentation stems from FPI's purchase of a majority interest in Fischler and Kapel's company, Creative Flavor Concepts, Inc. ("CFC"). CFC had two businesses: (1) the design and manufacture of flavors that it sold to sellers of food, beverage, sports nutrition, and dietary products (the "Flavor Business"); and (2) the manufacture of food, beverage, sports nutrition, and dietary products that it sold directly to retail brands and manufacturers (the "Turn-key Business"). (*Id.* ¶¶ 27–29.)

In 2015, Harris pitched the concept of FPI purchasing CFC, and the parties negotiated over the phone and in person. (*Id.* ¶¶ 34, 38–44.) During three meetings in April, May, and June 2015, Harris and David Bergstein (FPI's agent) "both represented to Fischler that FPI was *interested in development of the Turn-key Business* and *wished to maximize the revenues* (and therefore the EBITDA) of CFC through the creation and utilization of the Ohio Beverage Line."[2] (*Id.* ¶¶ 90 (emphases added), 211.) In June 2015, the parties entered into a "CFC Purchase Agreement" whereby FPI agreed to purchase a majority interest in CFC (the "CFC Acquisition"). (*Id.* ¶¶ 44, 49, 80.) The CFC Purchase Agreement was amended in

---

[2] Although Plaintiffs do not specify in their pleadings, the Court presumes that "EBITDA" stands for: earnings before interest, taxes, depreciation, and amortization.

March 2016, and under the amended terms, "the valuation of CFC was to be determined based on CFC's EBITDA for 2016." (*Id.* ¶¶ 209–10.)

According to Plaintiffs, "Harris and Bergstein's representations that they wished to maximize the revenues . . . of CFC were false." (*Id.* ¶ 214.) Specifically, Plaintiffs allege that "the Ohio Beverage Line never operated properly and ultimately cost CFC greatly in profits." (*Id.* ¶¶ 91, 113, 213, 333.) Thus, Plaintiffs conclude that "Harris and Bergstein (and therefore FPI) wished to minimize the revenues . . . of CFC so that the ultimate purchase value paid to Plaintiffs would be reduced." (*Id.*)

On January 13, 2017, CFC, FPI, and FPI's wholly owned subsidiary, Creative Concepts Holdings, LLC ("CCH") "entered into an initial asset purchase agreement under which CFC sold its Flavor Business assets to FPI and its Turn-key Business assets to [CCH]." (*Id.* ¶ 138.) Plaintiffs allege that because of Defendants' successful "scheme" to drive down CFC's revenues, FPI and CCH acquired a majority interest in CFC at a "markedly reduced price." (*Id.* ¶ 137.)

### B. Second Alleged Misrepresentation – Value of CCH's Assets

The second set of alleged misrepresentations concerns the value of CCH's assets in 2017. Plaintiffs allege that "on March 26, 2017 and April 8, 2015 [sic], Harris and Bergstein stated in telephone calls between themselves, Fischler[,] and Kapel that CCH had a $20,000,000 asset balance sheet value plus prospective business [worth] $4,5000,000 [sic] that was guaranteed." (*Id.* ¶¶ 150, 223.) "Based on this valuation[,] Harris and Bergstein represented the value of the CFC Stock at a value of approximately $2,500,000." (*Id.*) Relatedly, "[o]n April 22, 2017, during a telephone conversation, Bergstein and Harris presented to Fischler and Kapel what was represented to be FPI-prepared financial statements for CCH that confirmed this valuation and contained additional representations concerning the profitability of CCH's wholly owned subsidiary, Biozone Laboratories, Inc. ('Biozone')." (*Id.* ¶ 151.)

On May 12, 2017, Defendants formed CCH Acquisition Group, LLC ("CAG") to "spin off the stock or assets of CCH." (*Id.* ¶ 169.) Plaintiffs allege that on May 31,

2017 email, Bergstein emailed Plaintiffs documents regarding CAG and stated, "CCH has a very strong balance sheet with $21 Million in assets and $2.8 Million in liabilities." (*Id.* ¶¶ 172, 241, 262, 277, 296, 315.)

Plaintiffs allege that all of these representations about CCH's assets were false. To support falsity, Plaintiffs allege, over and over, that "[i]n June 2018[,] an independently issued asset appraisal of CCH reflected CCH [sic] liquidated asset value of less than $2,000,000, and thus CCH was essentially worthless due to third party financial obligations that exceeded the asset liquidation value." (*Id.* ¶¶ 154, 178, 187, 226, 243, 264, 278, 297, 316.)

Based on these alleged misrepresentations, Plaintiffs claim they were fraudulently induced to enter various transactions, as detailed below.

### 1. *CFC Asset Purchase*

On April 27, 2017, the initial purchase of CFC's assets was rescinded. (*Id.* ¶ 140.) Then, on April 28, 2017, the parties entered into a final Asset Purchase Agreement ("APA"), whereby FPI purchased the Flavor Business assets and CCH purchased the Turn-key Business assets, again. (*See id.* ¶¶ 141–42.) In exchange for the Turn-key Business, CCH issued a 22% membership interest in CCH ("CCH Stock") to Fischler and Kapel, who contributed the stock to FKH. (*Id.* ¶¶ 144–45.) Plaintiffs allege that they would not have entered into the APA if they had known the "true financial status of Biozone and CCH." (*Id.* ¶ 233.) Consequently, with their third claim, Plaintiffs seek damages worth "$2,500,000, which amount represents the value of the CCH Stock received by Plaintiffs as partial consideration under the [APA]." (*Id.* ¶ 234.)[3]

---

[3] In their third claim, Plaintiffs also tack on a claim for damages in the amount of "$535,000 for accounts payable operating expenses that [FPI] was obligated to pay, but that were instead paid by Fischler and Kapel." (SAC ¶ 235.) Allegedly, "Bergstein and Harris repeatedly promised that this amount would be reimbursed[,] but it never was." (*Id.* ¶ 147.)

### 2. *Biozone Employment Agreements*

On July 1, 2017, Fischler and Kapel agreed to be at-will employees with Biozone ("Biozone Employment Agreements"). (*Id.* ¶¶ 188–90.) The Biozone Employment Agreements provided lower base compensations than Fischler and Kapel normally received, plus a bonus structure based on CAG's earnings. (*Id.* ¶¶ 189–90.) Plaintiffs allege that they would not have agreed to the Biozone Employment Agreements had Defendants been honest about CCH's and Biozone's financials. (*Id.* ¶ 250.) Fischler and Kapel claim they would have respectively earned $233,333 and $87,500 more in salaries if they had not been fraudulently induced into the agreements. (*Id.* ¶¶ 251–52.)

### 3. *Unit Purchase Agreement and Individual CAG Investments*

As mentioned, Defendants formed CAG to "spinoff" the stock or assets of CCH. (*Id.* ¶ 169.) Plaintiffs allege, upon information and belief, that FPI transferred its interest in CCH to CAG "as part of a large-scale plan to transfer all stock in CCH to CAG, and reduce FPI's ownership by soliciting additional investors and redeeming its shares in CAG (the 'CCH Spinoff')." (*Id.* ¶ 170.) Allegedly in reliance on Defendants' fraudulent representations about CCH, FKH transferred its interest in CCH to CAG, in exchange for an interest in CAG (the "Unit Purchase Agreement"). (*Id.* ¶ 182.) Similarly, "Kapel and Fischler also invested an additional $750,000 in [CAG]." (*Id.* ¶¶ 16, 185, 284, 287, 320, 325.) But had Plaintiffs been aware of the true financial status of CAG and its subsidiaries, they would not have invested in CAG, either through FKH or individually. (*Id.* ¶¶ 184, 186, 286, 305, 324.)

## C. Causes of Action

Based on the above, Plaintiffs assert the following claims against Defendants in the SAC: (1) fraudulent inducement of the CFC Acquisition; (3) fraudulent inducement of the CFC Asset Sale;[4] (4) fraudulent inducement of the Biozone

---

[4] Plaintiffs purposely omit a second cause of action, as the Court previously dismissed Plaintiffs' second claim with prejudice. (*See* SAC at 34.)

Agreements; (5) fraudulent inducement of the Unit Purchase Agreement (i.e., FKH's investment in CAG); (6) fraudulent inducement of the CAG Investment by Fischler and Kapel; and (7–9) securities fraud under 17 C.F.R. § 240.10b-5. (*Id.* ¶¶ 207–341.)

### III. MOTION TO DISMISS

First, the Court considers Defendants' Motion to Dismiss the SAC.

#### A. Legal Standard

Rule 12(b)(6) provides for dismissal of a complaint for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). But factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Testing the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings on a motion to dismiss and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee*, 250 F.3d at 679. However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, or unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

#### B. Discussion

Previously, the Court dismissed Plaintiffs' claims for failure to meet Rule 9(b)'s heightened pleading standard applicable to claims for fraud and securities fraud. (*See* Prior Order 20.) Now, Defendants challenge the SAC largely on the same basis, that Plaintiffs fail to satisfy the heightened pleading requirements.

To plead a claim for fraudulent inducement, a plaintiff must allege the defendant made a misrepresentation with knowledge of its falsity, intending to induce Plaintiffs' reliance, which Plaintiff then justifiably relied upon, resulting in damages. *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996). Further, "where a complaint includes allegations of fraud, [Rule] 9(b) requires more specificity including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). Plaintiffs must set forth "what is false or misleading about the purportedly fraudulent statement, and why it is false." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013).

With these principles in mind, the Court considers Defendants' arguments against Plaintiffs' claims, in turn.

### 1. *Fraudulent Inducement of the CFC Acquisition (Claim One)*

With respect to claim one, the Court previously identified several deficiencies in Plaintiffs' allegations, stating Plaintiffs failed to plead the "when," "where," "what," and "what was false or misleading . . . and why it is false." (Prior Order 11–12.) Now, in their SAC, Plaintiffs include some additional details. (*See* SAC ¶¶ 38–39, 41–43, 112–13.) In particular, Plaintiffs allege that over the course of three meetings in April, May, and June 2015, "Harris and Bergstein both represented to Fischler that FPI was interested in development of the Turn-key Business and wished to maximize the revenues (and therefore the EBITDA) of CFC through the creation and utilization of the Ohio Beverage Line." (*Id.* ¶¶ 90, 211.)

Despite having more specificity on amendment, Plaintiffs' first claim for fraud still falls short because "[g]enerally, fraudulent misrepresentations must take the form of present or past *facts*, rather than promises, predictions, or opinions about future conduct." *Terstate Restoration, LLC v. Seaman*, No. SACV 13-00706 DOC (RNBx), 2014 WL 12569347, at *9 (C.D. Cal. July 9, 2014) (citing 5 Witkin, Summ. of Cal.

Law § 774 (10th ed. 2005)); *see also Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 607 (2014) ("It is hornbook law that an actionable misrepresentation must be made about past or existing facts; statements regarding future events are merely deemed opinions.").

Here, the allegations are that Defendants represented a desire to maximize CFC's revenues by planning to utilize FPI's Ohio Beverage Line in a profitable manner. (*See* SAC ¶¶ 90, 211.) These allegations amount to nothing more than "promises, predictions, or opinions about future conduct." *Terstate Restoration*, 2014 WL 12569347, at *9. To be sure, "[a] promise made without any intention of performing it constitutes actual fraud and deceit." *Graham v. L.A. First Nat. Tr. & Sav. Bank*, 3 Cal. 2d 37, 42 (1935); (*see* Opp'n MTD 5). But Plaintiffs do not allege that Defendants *promised* increased revenue for CFC—the allegations are that Defendants "wished to maximize" those values. Moreover, Plaintiffs' own allegations undercut their theory that Defendants were *lying* when they expressed a desire to maximize CFC's revenues by way of the Ohio Beverage Line. Rather, it appears that Defendants *did* create and attempt to utilize the Ohio Beverage Line, but "[u]nfortunately, due to quality and planning issues with the Ohio Beverage Line, only a fraction of this production occurred." (SAC ¶ 126.) For all these reasons, Plaintiffs fail to allege an actionable misrepresentation upon which to base their Claim One for fraudulent inducement of the CFC Acquisition. Accordingly, this claim is **DISMISSED**.

### 2. *Fraudulent Inducement of the CFC Asset Sale (Claim Three)*

The Court previously dismissed Plaintiffs' third claim for failure to meet the heightened pleading standard of Rule 9(b), and for failure to adequately allege that a false representation was made regarding the APA. (Prior Order 13.) In the SAC, Plaintiffs have alleged some more details. They allege that, "on March 26, 2017 and April 8, 2015 [sic], Harris and Bergstein stated in telephone calls between themselves, Fischler and Kapel that CCH had a $20,000,000 asset balance sheet value plus

prospective business from Muscle Pharm over a three year period at $4,5000,000 [sic] that was guaranteed," and "[b]ased on this valuation Harris and Bergstein represented the value of the CFC Stock at a value of approximately $2,500,000." (SAC ¶¶ 150, 223.) Then, "[o]n April 22, 2017, during a telephone call, Bergstein and Harris presented to Fischler and Kapel what they represented to be FPI-prepared financial statements for CCH that confirmed this valuation and contained additional representations concerning the profitability of . . . Biozone." (*Id.* ¶¶ 151, 224.) Now, Defendants challenge this third claim on several grounds.

### a. Actionable Misrepresentation / Justifiable Reliance

Defendants argue that Plaintiffs fail to allege an actionable misrepresentation because a statement of value is an opinion, not a statement of fact. (MTD 10 (citing *Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells*, 86 Cal. App. 4th 303 (2000)).) But Defendants' reliance on *Neu-Visions Sports* is misplaced, as that court also explained that "when a party possesses or holds itself out as possessing superior knowledge or special information . . . and a plaintiff is so situated that it may reasonably rely on such supposed knowledge . . . the defendant's representation may be treated as one of material fact." *Id.* at 307 (quoting *Billy v. Arthur Young & Co.*, 3 Cal. 4th 370, 408 (1992)). Here, Plaintiffs allege that "FPI continued to maintain the books and records for CCH and handle day-to-day accounting activities," and that "Bergstein was the point-person between FPI and CCH during this period." (SAC ¶ 157.) They allege that Harris was the CEO of FPI *and* the President of CCH. (*See id.* ¶¶ 34, 51, 146.) Based on these roles, it would have been reasonable and justifiable for Plaintiffs to rely on Defendants' representations regarding CCH's finances.[5]

---

[5] This also addresses Defendants' argument regarding whether Plaintiffs fail to allege justifiable reliance regarding their third claim.

### b. Falsity / Knowledge / Intent to Deceive

Defendants also argue that Plaintiffs fail to sufficiently allege falsity regarding Defendants' representations of CCH's value. (MTD 12.) Essentially, Defendants argue that Plaintiffs offer *no* facts to support falsity. (*Id.*) But the Court disagrees. Plaintiffs allege that "[i]n June 2018[,] an independently issued asset appraisal of CCH reflected CCH [sic] liquidated asset value of less than $2,000,000, and thus CCH was essentially worthless due to third party financial obligations that exceeded the asset liquidation value." (*Id.* ¶¶ 153, 178, 187, 226, 243, 264, 278, 297, 316.) Accepting this alleged fact as true, it is plausible to conclude that Defendants misrepresented the value of CCH's assets in 2017 when they represented CCH's assets at being valued around $21 million. Thus, although Plaintiffs only offer one particular fact to support the inference, they adequately plead falsity with respect to the representations of CCH's asset value.

As for knowledge of falsity and intent to deceive, "Rule 9(b) does not require more than general allegations regarding malice, intent, knowledge, and other conditions of a person's mind." *Scott v. Ariz. Ctr. for Hematology & Oncology PLC*, No. CV-16-03703-PHX-DGC, 2018 WL 1210903, at *3 (D. Ariz. Mar. 8, 2018) (citing Fed. R. Civ. P. 9(b)); *see also Neubronner v. Milken*, 6 F.3d 666, 669 n.4 (9th Cir. 1993) (same). Here, Plaintiffs allege generally that Defendants knew the representations about CCH's assets were false, and that Defendants intended for the misrepresentations to deceive Plaintiffs. At this pleading stage, these allegations are sufficient. *See* Fed. R. Civ. P. 9(b).

### c. Economic Loss Rule

Lastly with respect to this third claim, Defendants argue that Plaintiffs' tacked-on claim for $535,000 is barred by the economic loss doctrine. (MTD 14.) Defendants are correct. "The economic loss rule requires a [plaintiff] to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate *harm* above and beyond a broken contractual promise." *Robinson*

*Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004) (emphasis added) ("Quite simply, the economic loss rule prevents the law of contract and the law of tort from dissolving one into the other." (internal quotation marks and brackets omitted)); *accord ChromaDex, Inc. v. Elysium Health, Inc.*, 301 F. Supp. 3d 963, 970 (C.D. Cal. 2017) (holding economic loss rule applicable where "[plaintiff's] injury is simply economic harm resulting from the contract—namely, that [defendant] owes it money that [defendant] will not pay").

Here, Plaintiffs seek damages in the amount of "$535,000 for accounts payable operating expenses that [FPI] was obligated to pay, but that were instead paid by Fischler and Kapel." (SAC ¶ 235.) Allegedly, "Bergstein and Harris repeatedly promised that this amount would be reimbursed[,] but it never was." (*Id.* ¶ 147.) Plaintiffs do not allege *harm* above and beyond a broken promise to pay them, so to the extent Plaintiffs' third claim seeks reimbursement of the allegedly owed $535,000, it is **DISMISSED with prejudice**, as an amendment could not overcome the economic loss doctrine.

That said, because Defendants do not raise valid grounds for dismissing the remainder of the third claim, Defendants' Motion with respect to this claim is otherwise **DENIED**.

### 3. Fraudulent Inducement of the Biozone Agreements (Claim Four), FKH's Investment in CAG (Claim Five), and the Individuals' Investment in CAG (Claim Six)

Plaintiffs reassert claims four, five, and six, which all stem from the same alleged misrepresentation that serves as the basis for claim three. (SAC ¶¶ 236–87.) Plaintiffs allege that they would not have agreed to be Biozone employees for less pay, nor would they have invested in CAG (through FKH or individually), but for the fact that Defendants misrepresented CCH as having $21 million in assets. (*Id.* ¶¶ 184, 186, 233, 250, 286, 305, 324.)

Defendants raise the same arguments against these claims as they did against claim three—namely, that Plaintiffs fail to plead (1) actionable misrepresentation, (2) falsity, knowledge, or intent to deceive, and (3) justifiable reliance. (MTD 14–19.) For the reasons already discussed above, Defendants' arguments fail. (*See supra* Part III.B.2.) Accordingly, with respect to claims four, five, and six, Defendants' Motion is **DENIED**.

### 4. *Rule 10b-5(b) Securities Fraud Resulting in CAG Investments (Claims Seven and Eight)*

Plaintiffs reassert claims seven and eight, for securities fraud related to investments in CAG by FKH and the Individuals, respectively. (SAC ¶¶ 288–325.) To properly plead a claim under Rule 10b-5(b), a plaintiff must allege the defendant made a material misrepresentation with intent to defraud, that was connected to the purchase or sale of a security, that was relied upon by Plaintiffs, thereby causing Plaintiffs an economic loss. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005); *see also* 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5(b) (making it unlawful, in connection with the purchase or sale of any security, "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made . . . not misleading").

Here, Plaintiffs allege that Defendants misrepresented the value of CCH's assets with an intent to deceive Plaintiffs into investing in CAG, which Plaintiffs did to their detriment in reliance on the misrepresentations. Notably, Plaintiffs' seventh and eighth claims also stem from the same alleged misrepresentation that serves as the basis for claims three, four, five, and six. And with respect to claims seven and eight, Defendants raise the same arguments already discussed above—that Plaintiffs fail to allege an actionable misrepresentation, scienter, falsity, or justifiable reliance. (MTD 21–24.) And again, for reasons already explained, Defendants' arguments fall short. (*See supra* Part III.B.2.)

Defendants also seem to argue that securities law does not apply here because the alleged misrepresentation was not made in connection with the sale or purchase of a security. (MTD 20 ("Federal securities laws 'must not be construed so broadly as to convert every common-law fraud that happens to involve securities into a violation of § 10(b).'" (quoting *S.E.C. v. Zandford*, 535 U.S. 813, 820 (2002))).) But that argument is not convincing in a case like this, where Plaintiffs allege the preparation and dissemination of fraudulent financial information to potential investors, including Plaintiffs, in order to induce investments in CAG. (*See* SAC ¶¶ 288–341.) "[A] security is an instrument in which there is 'common trading.'" *Marine Bank v. Weaver*, 455 U.S. 551, 560 (1982). The transactions detailed here are not the type of "unique agreement[s], negotiated one-on-one by the parties" that have been held to be "not a security." *See id.* at 559–60 ("[U]nusual instruments found to constitute securities in prior cases involved offers to a number of potential investors, not a private transaction as in this case.").

For these reasons, with respect to claims seven and eight, Defendants' Motion is **DENIED**.

### 5. *Rule 10b-5(a) and (c) Securities Fraud Resulting in CFC Acquisition (Claim Nine)*

Plaintiffs reassert claim nine, for securities fraud based on the alleged scheme that Defendants manipulated CFC's revenues to obtain a lower purchase price in the CFC Acquisition. (SAC ¶¶ 326–41.) Defendants raise several challenges to this claim, but the Court need not address all of those arguments because this claim, like Plaintiffs' first claim, stems from the alleged misrepresentations that Defendants wished to maximize CFC's revenues. (*See id.* ¶ 334.) As explained above, Plaintiffs fail to allege an actionable misrepresentation upon which to base this claim. (*See supra* Part III.B.1.) Accordingly, for reasons already discussed above, this claim is also **DISMISSED**.

## IV. LEAVE TO AMEND

The question remains whether to grant leave to amend claims one and nine, which have been dismissed. Plaintiffs have also moved for leave to file a Third Amended Complaint ("TAC"). (*See* Mot. Amend.) Ordinarily, "[t]he Court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Reasons to deny leave to amend include "bad faith, undue delay, prejudice to the opposing party, and/or futility." *Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010) (quoting *William O. Gilly Enters. v. Atl. Richfield Co.*, 588 F.3d 659, 669 n.8 (9th Cir. 2009)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).

### A. Dismissed Claims

First, the Court finds that leave to amend claims one and nine would be futile. "[W]hen a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is 'particularly broad.'" *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002); *see also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (failure to correct previously noted deficiencies is "a strong indication that the plaintiffs have no additional facts to plead"). Here, Plaintiffs have had enough opportunity to bolster their allegations for claims one and nine, and it seems clear that the alleged misrepresentations underlying these claims—that Defendants wished and intended to maximize CFC's revenues—are simply not actionable as fraud. Accordingly, leave to amend these dismissed claims is **DENIED**.

### B. Plaintiffs' Motion for Leave to Amend

With their Motion, Plaintiffs seek leave to allege that Defendants tricked them into believing FPI would assume liability for the Employment Agreements under the APA. (Mot. Amend 1–3.) Plaintiffs argue that such allegations "lead[] to yet more bases for Plaintiffs to assert a claim for fraudulent inducement of the [APA]." (*Id.* at 2.) Alternatively, Plaintiffs want to assert two additional claims against Defendants

for breach of contract, based on alleged breaches of the APA and the Employment Agreements, respectively. (*Id.* at 2–3.)

Some procedural history is relevant here. In the First Amended Complaint ("FAC"), Plaintiffs alleged that Fischler and Kapel each entered into non-terminable, seven-year employment agreements (the "Employment Agreements") with their own company, Creative Flavor Concepts, Inc. ("CFC"). (FAC ¶¶ 218–220.) Significantly, Plaintiffs alleged that "FPI assumed the Employment Agreements . . . around January 2017 as part of the sale of CFC's assets ["Asset Purchase Agreement" or "APA"] . . . and FPI, either directly or through subsidiaries, compensated Fischler and Kapel according to the terms of the Employment Agreements until June 2017, at which time FPI ceased paying altogether." (*Id.* ¶ 223.) According to Plaintiffs, "[t]he Employment Agreements were never terminated[,] and therefore FPI continues to be liable to pay Fischler and Kapel the contracted amounts." (*Id.* ¶ 224.)

Based on those allegations, Plaintiffs brought a claim for fraudulent inducement of the Employment Agreements. (*Id.* ¶¶ 217–231.) On Defendants' previous motion to dismiss the FAC, the Court dismissed that claim, with prejudice, based on the economic loss doctrine. (Prior Order 14–15.) The Court explained that Plaintiffs' claim for fraudulent inducement of the Employment Agreements was barred because it was "based solely on FPI's purported promise to pay Plaintiffs pursuant to the terms of the . . . Employment Agreements, and FPI's subsequent failure to pay Plaintiffs the amounts owed under those agreements." (*Id.* at 14.)

Meanwhile, because the Employment Agreements contained arbitration clauses, Plaintiffs pursued breach of contract claims against Defendants in a parallel arbitration. (*See* FAC ¶¶ 65–66.) On May 17, 2021, the Arbitrator issued an order denying Plaintiffs' motion to compel arbitration. (Decl. of David K. Bowles ¶ 3, ECF No. 69.) "After study of the Opening briefs and Oppositions, the declarations and exhibits in support of the briefs, after study of the cases cited, and after hearing arguments of Counsel," the Arbitrator found that FPI could not be forced to arbitrate

claims for breach of the Employment Agreements because Plaintiffs did not "demonstrate that FPI agreed to arbitrate the disputes by assuming the [Employment] Agreements, accepting the assignment of the [Employment] Agreements, or taking an affirmative, express action to become a party to the [Employment] Agreements." (Arb. Order 1, 7, ECF No. 69-1.)

Now, Plaintiffs want to amend claim four to allege an extra basis for fraud in the inducement of the APA, and they want to add two claims for breach of contract based on the APA and the Employment Agreements, respectively. (*See* Mot. Amend.)

### *1. Proposed Breach of Contract Claims*

Leave to add the proposed breach of contract claims is not appropriate because such amendment would be futile. The Court can rely on the APA to the extent it is incorporated by reference in Plaintiffs' complaint and proposed amendments. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) ("A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion."); *see also Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 925–26 (9th Cir. 2003) ("Under California law, the interpretation of contract language is a question of law.").

Under the terms of the APA, it is clear that FPI did not assume the Employment Agreements. The APA defines FPI as the "Flavor Buyer" and another entity, non-party Creative Concepts Holdings, Inc. ("CCH"), as the "Buyer." (*See* APA at Preamble, ECF No. 67-4.) It also makes clear that the Employment Agreements were to be "executed and delivered to the Buyer"—i.e., CCH, not FPI. (*Id.* § 10.1(e).) Yet Plaintiffs seek to assert their breach of contract claims against FPI, not CCH, based exclusively on a theory that the APA's written terms obligated FPI to assume the Employment Agreements. (*See* Prop. TAC ¶¶ 374–94.) Because it is clear the APA did not create such contractual liability for FPI, Plaintiffs' proposed breach of contract

claims are plainly meritless, and the proposed amendments would be futile. Thus, leave to add such claims is **DENIED**. *See Serra*, 600 F.3d at 1200.

### 2. *No Leave to Amend Claim Four*

As for the extra allegations regarding the claim for fraudulent inducement of the APA, amendment would likewise be futile because reliance on a representation that FPI would assume liability for the Employment Agreements under the APA would have been unjustifiable. "An essential element in recovery for [fraud or] deceit is proof of the plaintiff's justifiable reliance on the defendant's fraudulent representations." *City Sols., Inc. v. Clear Channel Commc'ns*, 365 F.3d 835, 840 (9th Cir. 2004). "[W]hether a party's reliance was justified may be decided as a matter of law if reasonable minds can come to *only one* conclusion based on the facts." *Id.* "There cannot be a valid express contract and an implied contract, each embracing the same subject, but requiring different results." *Agosta v. Astor*, 120 Cal. App. 4th 596, 604 (2004) (quoting *Starzynski v. Capital Public Radio, Inc.*, 88 Cal. App. 4th 33, 38 (2001)). In such a case, "[t]he express term is controlling even if it is not contained in an integrated employment contract." *Id.* ("[A]n express written agreement, signed by an employee, cannot be overcome by proof of an implied contrary understanding." (emphasis omitted)).

Here, the express terms of the APA are clear—FPI did not assume the Employment Agreements under the written terms of the APA, and no reasonable mind could conclude otherwise. (*See supra*); APA § 10.1(e). Furthermore, the APA contained an integration clause. (*See* APA § 16.5 ("This [APA] constitutes the entire agreement between the parties . . . and supersedes all prior and contemporaneous agreements with respect to the subject matter hereof, whether written or oral, whether express or implied."). Consequently, it would have been "simply not justifiable" for Plaintiffs to rely on oral representations that FPI would assume the Employment Agreements under the APA when the express terms of the APA say otherwise. *See*

*Agosta*, 120 Cal. App. 4th at 604. As no amendment could overcome this deficiency, leave to amend claim four is also **DENIED**. *See Serra*, 600 F.3d at 1200.

## V. CONCLUSION

In summary, Defendants' Motion to Dismiss the SAC is **GRANTED in part** and **DENIED in part**. (ECF No. 60.) Plaintiffs' claims one and nine are **DISMISSED with prejudice**. To the extent Plaintiffs' claim three demands reimbursement of $535,000 based on Defendants' promises to pay, the claim is **DISMISSED with prejudice**. As to the remainder of Plaintiffs' claims (including the remainder of claim three), Defendants' Motion is **DENIED**. Additionally, Plaintiffs' Motion for Leave to Amend is **DENIED**. (ECF No. 65.) Defendants shall file their Answer(s) to the SAC pursuant to Rule 12(a)(4)(A).

**IT IS SO ORDERED.**

July 12, 2021

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**